**CARLOATE INDUSTRIES, INC.,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 22144.

United States Court of Appeals
Fifth Circuit.

Jan. 4, 1966.

James C. Abbott, Ewers Toothaker, Ewers, Byfield & Abbott, McAllen, Tex., for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Woodrow B. Seals, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., Joseph Kovner, Herbert S. Kendrick, Thomas L. Stapleton, Robert L. Waters, Attys., Dept. of Justice, Washington, D. C., John H. Baumgarten, James R. Gough, Asst. U. S. Attys., Houston, Tex., for appellee.

Before TUTTLE, Chief Judge, HUTCHESON, Circuit Judge, and HUNTER, District Judge.

HUTCHESON, Circuit Judge:

This is an appeal from a judgment[1] dismissing Taxpayer Carloate Industries, Inc.'s claim for refund of income taxes of $829.58 (inclusive of interest), which it alleges were overpaid for its fiscal year ending June 30, 1959.[2] The refund claim involves a casualty loss deduction under Internal Revenue Code of 1954 Section 165[3] and is based on a casualty loss suffered by Carloate to its citrus groves. The Commissioner determined, and the court below affirmed, that in computing the amount of the casualty loss the citrus trees were to be treated separately from the land upon which they were located, and that since the land was not damaged Carloate was entitled to a casualty loss deduction only for the trees. We affirm the "separate treatment" method of computation; but we reverse the district court's finding of no casualty loss to the land and remand for a determination of the amount of this loss.

The material facts are undisputed and agreed upon. Carloate owns and operates two citrus groves in the Rio Grande

---

1. Reported at 230 F.Supp. 282 (S.D.Tex. 1964).

2. The casualty loss occurred during the fiscal year ending June 30, 1962. Carloate's operations during fiscal year 1962 (including the casualty loss) resulted in a loss, which was carried back as a net operating loss to fiscal year 1959. The net operating loss deduction claimed in fiscal year 1959 was decreased by the Internal Revenue Service to reflect its adjustment of the casualty loss deduction included within the 1962 net operating loss. Thus the claim for refund actually involves taxes paid for fiscal 1959.

3. Int.Rev.Code of 1954 Section 165 reads in pertinent part:
   (a) General rule.
   There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.
   (b) Amount of deduction.
   For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property.

Valley area of Texas. The purchase price paid for the groves was allocated between the trees and the land to establish a basis for depreciating the trees. In January, 1962, a severe freeze destroyed "for all practical purposes" all of the trees, leaving the land with the dead or dying remains. At that time the depreciated (or adjusted) cost basis of the trees in both groves was $5,375.01; the total cost basis of the land was $3,500. The groves— trees and land—had an appraised fair market value before the freeze of $14,750; after the freeze the appraised fair market value was $6,333.33. In computing the casualty loss thus sustained Carloate regarded the land and the trees of each grove as a single, integral unit and claimed a casualty loss deduction of $8,- 041.67.[4] The Commissioner, computing the casualty loss to the trees and to the land separately, determined that Carloate was entitled to a casualty loss deduction of only $5,375.01.[5] The resultant deficiency and the Commissioner's rejection of Carloate's claim for refund culminated in the present suit.

The first question before us is whether a casualty loss to a citrus grove used in a trade or business is to be determined with reference to the land and the trees separately, or whether the land and the trees are to be treated as one integral unit. In support of the latter view Carloate argues as follows: in determining a casualty loss involving nonbusiness property improvements and land are considered as one integral unit;[6] in specifying

4. The casualty loss deduction computations are as follows:

| 1. Decrease in fair market value: | Grove 1 | Grove 2 |
|---|---|---|
| Appraised fair market value before freeze (land and trees) | $6,750.00 | $8,000.00 |
| Appraised fair market value after freeze | 3,000.00 | 3,333.33 |
| Decrease in fair market value due to freeze | $3,750.00 | $4,666.67 |
| 2. Limitation of deductible loss: | | |
| Original cost of grove (land and trees) | $4,000.00 | $6,666.67 |
| Previously allowed depreciation | 625.00 | 1,666.65 |
| Adjusted cost basis | $3,375.00 | $5,500.02 |
| 3. Casualty loss deduction: | | |
| Lesser of item 1 or item 2 | $3,375.00 | $4,666.67 |
| Total casualty loss deduction $8,041.67 | | |

5. In his computations the Commissioner accepted as correct Carloate's appraised fair market values before and after the freeze. However, the Commissioner asserted that the decrease in fair market value was entirely attributable to the destruction of the trees and that the fair market value of the land was not affected by the freeze. Thus the Commissioner's computations are as follows:

| 1. Decrease in fair market value: | Grove 1 | Grove 2 |
|---|---|---|
| (Attributable to loss of trees only) | $3,750.00 | $4,666.67 |
| 2. Limitation of deductible loss: | | |
| Original cost of trees only | $2,500.00 | $4,666.66 |
| Previously allowed depreciation | 625.00 | 1,166.65 |
| Adjusted cost basis | $1,875.00 | $3,500.01 |
| 3. Casualty loss deduction: | | |
| Lesser of item 1 or item 2 | $1,875.00 | $3,500.01 |
| Total casualty loss deduction: $5,375.01 | | |

6. Treas.Reg. Sec. 1.165–7(b) (2) (ii):
In determining a casualty loss involving property and improvements thereon not used in a trade or business or in any transaction entered into for profit, the improvements (such as buildings and ornamental trees and shrubbery) to the property damaged or destroyed shall be considered an integral part of the property, * * * and no separate basis need be apportioned to such improvements.

the method of computing a casualty loss the Commissioner may not distinguish between business and nonbusiness properties; therefore for business property improvements and land must be considered one unit. The Commissioner has plainly adopted the former view in Treas. Reg. Sec. 1.165–7(b) (2) (i):

> A loss incurred in a trade or business or in any transaction entered into for profit shall be determined * * * by reference to the single, identifiable property damaged or destroyed. Thus, for example, in determining the fair market value of the property before and after the casualty in a case where damage by casualty has occurred to a building and ornamental or fruit trees used in a trade or business, the decrease in value shall be measured by taking the building and trees into account separately, and not together as an integral part of the realty, and separate losses shall be determined for such building and trees.

We hold that this regulation is in no way inconsistent with Section 165, Int.Rev.Code of 1954, and fully supports the "separate treatment" method of computation. Section 165(b), supra note 3, makes clear that a taxpayer is not to be allowed a casualty loss deduction in excess of the adjusted basis of the property damaged or destroyed, i. e., the cost of the property reduced by previously allowed depreciation. Carloate separated the land and the trees when it purchased its groves to establish a basis for depreciation of the trees; it has since taken a deduction for depreciation of the trees. Thus Carloate has already recovered a portion of the cost of its trees through annual depreciation deductions. Under the approach urged by Carloate it would be allowed a casualty loss deduction against the bases of both the land and the trees based on a casualty loss to the trees alone and without a showing of any casualty loss to the land. To permit Carloate a casualty loss deduc-

tion in excess of the adjusted basis of its trees without a showing of loss to the land would in effect enable Carloate to recover, as a result of the destruction only of the trees, more than its investment in the trees and to offset this recovery against the basis of the land.

Our holding finds ample support in United States v. Koshland, 208 F.2d 636 (9th Cir. 1953), and Bessie Knapp, 23 T.C. 716 (1955).[7] Knapp is directly in point; it involved a casualty loss to citrus trees in the Rio Grande Valley as a result of a freeze and ruled that "orchards used in trade or business are not to be considered as integral parts of the realty for the purpose of measuring loss from casualty for tax purposes." 23 T.C. at 720. Koshland involved the destruction by fire of a hotel and required in the determination of the casualty loss separate treatment of the hotel and the land upon which it was located. The basis for this holding was:

> The most obvious reason for this [separate] tax treatment of business realty [and the improvements thereon] is that a building is an exhaustible asset and therefore subject to depreciation under the income tax laws, while land is not. * * * Thus the necessity arises of allocating a part of the cost of a parcel of land with a building upon it to the building in order to fix its basis for computing depreciation. * * * The result is that there is no single "adjusted basis" for the land and building as a unit. The depreciation allowed or allowable on the building reduces the basis of the building only. No depreciation is allowed on the land, and the original basis of the land therefore remains unaffected. The adjusted basis of the building and the basis of the land cannot be combined into a single "adjusted basis" for the property as a whole, for to do so would in effect be reducing the basis of the whole by de-

---

7. Accord, William S. Blomeley, Jr., 23 CCH Tax Ct.Mem. 514 (1964).

preciation allowed or allowable only as against the building, a part.

208 F.2d at 639–640.

Carloate places primary reliance on Alcoma Ass'n v. United States, 239 F.2d 365 (5th Cir. 1956). Alcoma involved a casualty loss attributable to a hurricane which partially destroyed the taxpayer's citrus grove. Under attack was the Commissioner's formula (since abandoned) for computing a partial casualty loss to business property; [8] this court held that "[t]here is no statutory basis for making the distinction [between business and nonbusiness property] asserted by the Commissioner" and that the Owens rule (supra note 8) for computing a partial casualty loss "is equally applicable to business as to nonbusiness property". 239 F.2d at 367. In Alcoma we did not consider the issue in the present case, whether the Commissioner can require separate treatment of land and trees in computing a casualty loss; [9] Carloate's reliance on Alcoma is thus misplaced and our holding herein is not inconsistent with our earlier decision.[10]

■ The Commissioner asserted that the land was not damaged by the freeze and limited the casualty loss to the adjusted basis of the trees alone.[11] In upholding this assertion the district court said:

> "The only evidence before the Court on the question of damage to the land itself is to the effect, and the Court so finds, that the land suffered no damage as a result of the freeze."

230 F.Supp. at 283. We find no support for this conclusion in the record before us and accordingly reverse.

■ The freeze left Carloate's land covered with dead and dying trees and stumps. Uncontradicted testimony revealed that the land cannot be reused for cultivation until the trees and stumps

---

8. Prior to Alcoma the Supreme Court held in a partial loss case that a casualty loss to nonbusiness property is determined by the actual decrease in the fair market value of the property, measured by the difference in the fair market values immediately before and immediately after the casualty, but limited to the adjusted basis of the property. Helvering v. Owens, 305 U.S. 468, 59 S.Ct. 260, 83 L.Ed. 292 (1939). The Commissioner accepted Owens as defining the correct method of computing a partial casualty loss for *nonbusiness* property only, and continued to limit the allowable casualty loss in case of the partial destruction of *business* property to a fraction of the adjusted basis rather than to the full amount of the adjusted basis. See I.R.S. Pub. No. 155, "Losses From Hurricanes, Floods and Disasters" 2. Alcoma involved business property and "[u]pon agreed facts the only issue is whether * * * the Commissioner was correct in permitting taxpayer * * * to deduct only that portion of hurricane damage to his depreciable business property which constituted the same percentage of his adjusted cost basis of the entire property that the loss was of the total pre-hurricane market value." 239 F.2d 365–366.

9. Cf. Dick H. Woods, 19 CCH Tax Ct. Mem. 388 (1960).

10. We note that the "separate treatment" rule of Treas.Reg. Sec. 1.165–7(b) (2) (i) applies to business property and not to nonbusiness property. We here hold that this "separate treatment" rule finds full support in the statutory language. Whether the rationale of Alcoma precludes a different treatment for nonbusiness property we need not decide. The probability that a casualty loss to one property will be offset against the basis of another property, which has not sustained a casualty loss but which is part of an "integral unit" including the first property, is greater where the first property is a depreciable asset than where the first property is a nondepreciable asset and conceivably could justify the Commissioner's distinction.

11. Carloate asserted that the only issue before the district court was one of law, whether the land and trees had to be treated as separate properties. Under the Commissioner's theory an issue of fact regarding whether the land was damaged by the freeze was presented. The district court directed a trial on this fact issue.

and their underlying root systems are removed. The only evidence offered in opposition was that of a soil expert, who merely related the general physical effects that occur when soil is frozen. This is not enough. The casualty loss of Section 165 is founded upon an economic loss to the taxpayer; [12] evidence of the physical properties of soil before, during, and after freezing have little bearing on this question and is insufficient to support the factual conclusion that the land suffered no casualty loss from the freeze.

█ █ The only evidence in the record regarding whether the freeze damaged the land is to the effect that the rehabilitation expense necessary to return the land to a usable state would be taken into account by a prospective buyer and would decrease the fair market value of the land. Such expenses, if proved, clearly may be made the basis of a casualty loss claimed against the land.[13] The evidence suggests that rehabilitation of the land will cost a minimum of $125 to $150 per acre. While this is indicative of the decrease in the fair market value of the land due to the freeze, we cannot say with certainty that this is in fact the amount by which the fair market value was decreased. We do not feel that this issue was fully developed in the court below, since neither party proceeded on this theory. The trial court should be allowed to consider further this issue and to take additional evidence thereon if necessary. Accordingly the case is remanded to the trial court to ascertain the extent to which Carloate did sustain a casualty loss to its land as a result of the freeze.

Affirmed in part; reversed and remanded in part.

12. This is illustrated by the fact that the loss is measured by the decrease in fair market value of the property damaged or destroyed. See Treas.Reg. Section 1.165-7(b) (1).

13. Ralph Walton, 20 CCH Tax Ct.Mem. 653 (1961); Lena L. Steinert, 33 T.C. 447 (1959); Katherine B. Bliss, 27 T.C. 770 (1957), rev'd on other grounds, Bliss v. C. I. R., 256 F.2d 533 (2d Cir. 1958).