Edward T. Wayland v. Commissioner.
Wayland v. Commissioner
Docket No. 734-69SC.
United States Tax Court
T.C. Memo 1970-140; 1970 Tax Ct. Memo LEXIS 220; 29 T.C.M. (CCH) 616; T.C.M. (RIA) 70140; June 3, 1970, Filed *220 Held, the petitioner has failed to establish that casualty losses that casualty losses sustained by him in 1967 resulted in a net operating loss for that year, whic carried back to the year in issue, 1964. Herbert P. Phillips, 91 Merrimack St., Haverhill, Mass., for the p Haverhill, Mass., for the petitioner. Joel Gerber, for the respondent. 13 Simpson Memorandum Findings of Fact and Opinion SIMPSON, Judge: The respondent determined a deficiency in the petitioner's 1964 income tax in the amount of $386.40; the petitioner claims an overpayment of such tax in the amount of $578.48. The issue for decision is whether casualty losses incurred by the petitioner in 1967, with respect to a prototype organ he was developing and certain manuscripts he had written, resulted in a net operating loss for such year which may be carried back to 1964 pursuant to section 172 of the Internal Revenue Code of 1954. [1]
Findings of Fact Some of the facts have been stipulated, and those facts are so found. The petitioner, Edward T. Wayland, had his legal residence in Beverly, Massachusetts, at the time the petition was filed in this case. He filed his 1964 Federal income tax return, using the cash receipts and disbursements method of accounting, *222 with the district director of internal revenue in Boston, Massachusetts. On November 9, 1967, a house owned by the petitioner was destroyed by fire. On or about that same date, the house was also burglarized. As a result of these occurrences, a prototype electronic organ developed by the petitioner and five lengthy manuscripts written by him were either destroyed or stolen. The petitioner began work on developing the organ in 1945. Since that time, he developed various prototype models of the organ with a view to incorporating in it the latest electronic developments. The prototype model which was destroyed or stolen in 1967 was a transistorized version, the construction of which began sometime in 1963 or 1964. None of the organs constructed by the petitioner was ever patented or sold. The five manuscripts consisted of approximately 15,000 to 20,000 typed pages and dealt with subjects ranging from science fiction to domestic marital problems. The first manuscript had been completed in 1937, and by the time of the fire-theft loss, all five manuscripts were completed. 617 Opinion The petitioner has conceded the adjustments determined by the respondent in his notice of *223 deficiency with respect to 1964. However, the petitioner now contends that as a result of the loss of the prototype organ and the manuscripts in 1967, he sustained a loss of $68,995, which can be carried back to 1964, and which entitles him to a refund for that year. Thus, the issue that we must decide is whether the petitioner sustained a casualty loss in 1967 sufficient to result in a carryback for 1964. In order to determine whether the petitioner is entitled to any net operating loss carryback and the amount of any such carryback, we must first inquire into the amount of his loss for 1967. Under section 165(c), casualty losses are deductible for the year in which they are sustained. Section 1.165-7(b)(1), Income Tax Regs., provides rules for determining the amount deductible with respect to such losses: (b) Amount deductible - (1) General rule. In the case of any casualty loss whether or not incurred in a trade or business or in any transaction entered into for profit, the amount of loss to be taken into account for purposes of section 165(a) shall be the lesser of either - (i) The amount which is equal to the fair market value of the property immediately before the casualty *224 reduced by the fair market value of the property immediately after the casualty; or (ii) The amount of the adjusted basis prescribed in § 1.1011-1 for determining the loss from the sale or other disposition of the property involved. However, if property used in a trade or business or held for the production of income is totally destroyed by casualty, and if the fair market value of such property immediately before the casualty is less than the adjusted basis of such property, the amount of the adjusted basis of such property shall be treated as the amount of the loss for purposes of section 165(a). See Helvering v. Owens, 305 U.S. 468 (1939); Carloate Industries, Inc. v. United States, 354 F. 2d 814 (C.A. 5, 1966); Alcoma Association v. United States 239 F. 2d 365United States, 239 F. 2d 365 (C.A. 5, 1956); Fred Rosenthal, 48 T.C. 515 (1963), affd. 416 F. 2d 491 (C.A. 2, 1969). The petitioner has failed to establish that he is entitled to have the total bases of the organ and the manuscripts allowed as a loss under the last sentence of the quoted regulations. To come within that rule, he must establish *225 that the organ and manuscripts were properly held in a trade or business or for the production of income, and that such property was totally destroyed by casualty. Although he testified that he expected to derive commercial profit from the manuscripts, we cannot, in light of the other evidence, accept the view that such manuscripts were held for the production of income. One of the manuscripts was completed as early as 1937; the rest had been completed by the time of the casualty. However, there is no evidence that the petitioner ever attempted to publish or sell the manuscripts, and we have concluded that he had no bona fide expectation of deriving profit from them. Accordingly, his loss with respect to the manuscripts must be measured by the lower of basis or the diminution in fair market value. The petitioner testified that he expected to patent and commercially exploit the organ he was developing, and we have accepted such testimony as true since it seems reasonable in light of the evidence. However, to be entitled to compute his loss under the rule set forth in the last sentence of the regulations, he must also show that the organ was totally destroyed by casualty; and this *226 fact he has failed to prove. As we understand the petitioner's position, the property referred to as the organ was not limited to the actual prototype model destroyed by casualty. His claim of loss was not limited merely to the costs of the parts of the prototype. What the petitioner was attempting to develop was a plan for the construction of a portable electronic organ, and it was such plan which constituted the property with respect to which the loss was claimed. Although the development of the plan may have suffered a setback by the casualty, it was not totally destroyed. The petitioner testified that in a matter of years he could reconstruct the organ. This testimony was supported by schematic diagrams of the organ introduced in evidence by the petitioner. Accordingly, the petitioner's loss with respect to the organ must also be measured by the lower of basis or the diminution in fair market value. The petitioner, claiming that his records with respect to his costs of developing the organ and writing the manuscripts were destroyed, has testified that to the best of his recollection he expended $59,295 in developing the organ and $9,700 in writing the manuscripts. Although we *227 do not find this testimony inherently incredible, we think 618 that the amounts testified to were somewhat exaggerated. However, we need not reach the question of the bases of the organ and the manuscripts inasmuch as we have concluded that the basis of each exceeded the reduction in its fair market value resulting from the casualty. The petitioner testified that the manuscripts had a fair market value in excess of $10,000. This testimony is the only evidence in the record as to the fair market value of the manuscripts. However, under the circumstances, we cannot accept it as establishing any fair market value of the manuscripts. We can understand the petitioner's natural pride of authorship, but we cannot accept his bare assertion as offering any indication of the manuscripts' value. The record in no way establishes that they were of publishable quality; some of them had been completed for many years, yet there is no evidence that they had been or could be sold. We therefore find that the petitioner has not established that they had any value. The petitioner testified that the value of the organ was more than $100,000; but here, too, the evidence does not adequately support *228 the petitioner's testimony. At various times in the past, the petitioner made significantly different estimates of its value in connection with income tax returns and claims for refund filed by him. At one time, he estimated less than $15,000; at another time, less than $40,000; at another time, less than $31,374.19; and at still another time, less than $52,412.03. Furthermore, the petitioner did not disclose the basis on which he made his estimate. There was no showing that he had ascertained the value of other portable organs or that he had ascertained in any manner what could be realized on the sale of his model. In addition, he has failed to establish the diminution in the value of the model, because he has furnished us with no evidence as to the remaining value. Neverthelless, although we cannot find that the fair market value of the organ was as stated by the petitioner, we think that the organ property had some value and that such value was diminished by the casualty. We therefore have concluded that the petitioner sustained a deductible casualty loss of $2,000 in 1967 with respect to the organ. The question then becomes whether the petitioner has any net operating loss in *229 1967 which can be carried back to 1964. The petitioner has introduced in evidence two 1967 income tax returns and three claims for refund predicated on the casualty loss. These documents present a confused picture as to the petitioner's taxable income for 1967. In the latest return, dated March 11, 1968, he claimed a deduction of $51,553.00 as a result of casualty losses, but in the attached pages explaining the claim, the figures totaled over $56,000.00. He claimed that the total of his itemized deductions was $54,366.72, but the items individually set forth amount to only $53,416.62. The itemized deductions include a deduction of $250.00 for "Harassment I.R.S." and a deduction for thousands of dollars of casualty losses that the record establishes were partially compensated by insurance. This return presents substantial, obvious doubts about the petitioner's taxable income for 1967, and in view of such doubts we have concluded that the petitioner has failed to sustain his burden of proving that he is entitled to any loss carryback to 1964. See A. Raymond Jones, 25 T.C. 1100 (1956), rev'd on other grounds 259 F. 2d 300 (C.A. 5, 1958). Decision will be entered *230 for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954.↩