William F. WARD and Carrie Duffy Ward

v.

The UNITED STATES.

Kennedy W. WARD and Audrey P. Ward

v.

The UNITED STATES.

Nos. 300–68, 301–68.

United States Court of Claims.
July 15, 1970.

Kennedy W. Ward, New Bern, N. C., attorney of record, for plaintiffs. Ward & Ward, New Bern, N. C., of counsel.

Frances M. Foltz, Washington, D. C., with whom was Asst. Atty. Gen., Johnnie M. Walters, for defendant. Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## OPINION

DURFEE, Judge.

This is an action for refund of Federal income taxes, with interest, assessed and collected from plaintiffs by defendant. The case comes before the court on a Memorandum Report by Trial Commissioner Franklin M. Stone, without findings, upon facts stipulated by the parties.

On April 4th and 5th, 1963, a fire burned over almost an entire tract of 2,672 acres of pine timber land. Plaintiffs in each of these two actions owned a 50 percent interest in this property acquired by a total purchase price of $8,045, and 50 percent of the loss is attributable to each of the two parties plaintiff.

The amount of timber had increased substantially by natural growth during the ownership of plaintiffs, who had also, in addition, improved the timber stand by planting pine seedlings at small cost. Plaintiffs had conducted sporadic pulpwood and logging operations during the years preceding the casualty, and taxpayers' tax basis in the tract had been further reduced to zero by losses from other fires before 1963.

The fair market value of the damaged and destroyed timber was $56,058.13, the fair market value of the remaining timber was $12,135.92, and plaintiffs salvaged and sold damaged pine which produced $5,291.44 in income during 1963–1965. Each of the two parties plaintiff deducted a casualty loss of $28,029.06 in their 1963 U.S. Income Tax Return, for growing trees destroyed by fire and resulting insect infestation. The Internal Revenue Service disallowed these deductions, and assessed deficiencies, penalties and interest thereon which were paid in full. Plaintiffs subsequently filed timely claims for refund which were disallowed, and the petitions herein are based upon this action by the Internal Revenue Service.

Plaintiffs claim that, under § 165(a) and (c) of the Internal Revenue Code of 1954, they can avail themselves of the claimed deductions as a casualty loss of property not held in connection with a trade or business, consisting of the timber destroyed by fire when such loss was not compensated by insurance or otherwise. Plaintiffs also submit, in the alternative, that the loss of this timber by fire was not a "sale or other disposition of property" under § 165(b) of the Code.[1]

---

1. The relevant sections of the Internal Revenue Code of 1954 provide as follows: "§ 165. Losses.

"*(a) General Rule.*—There shall be allowed as a deduction any loss sustained during the taxable year and not compen-

Section 165(b) provides that "the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 \* \* \*." Section 1011 then provides that the basis for determining gain or loss "shall be the basis (determined under section 1012 \* \* \*), \* \* \* adjusted as provided in section 1016." To the extent pertinent here, § 1012 provides that the basis of property shall be its cost, and § 1016, in turn, provides for adjustments to the cost basis to reflect further events affecting the capital account of the property.

The cost basis of plaintiffs' timber land, under § 1012, was its purchase price. Adjustments to this basis are made under § 1016(a) (1) for "expenditures, receipts, losses or other items, properly chargeable to capital account \* \* \*", and under § 1016(a) (2) for "exhaustion, wear and tear, obsolescence, amortization and depletion, \* \* \*."

The amount of the deduction under § 165 is dependent upon the "adjusted basis provided in section 1011." In the

present case, it is stipulated that plaintiffs "had [no] *cost or tax basis remaining in the pine* at the time of the fire, which had grown since the date of purchase, and which was destroyed by the fire, based upon each taxpayer's original purchase price." [Emphasis supplied].

The general rule is that since the adjusted basis for the timber under § 1011 as of the date of the fire was zero, there can be no deduction from income under § 165.

This became more apparent in light of the Treasury Regulations on Income Tax (1954 Code). Treas.Reg. § 1.165–1(c) (1) provides:

The amount of loss allowable as a deduction under section 165(a) *shall not exceed* the amount prescribed by § 1.-1011–1 as *the adjusted basis \* \* \**. [Emphasis supplied]

Treas.Reg. § 1.165–7(b) (1) provides:

\* \* \* the amount of loss to be taken into account for purposes of section

165(a) shall be *the lesser of either—*

---

sated for by insurance or otherwise.

*"(b) Amount of Deduction.*—For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property.

*"(c) Limitation on Losses of Individuals.*—In the case of an individual, the deduction under subsection (a) shall be limited to—

\* \* \* \* \*

"(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. No loss described in this paragraph shall be allowed if, at the time of filing the return, such loss has been claimed for estate tax purposes in the estate tax return.

\* \* \* \* \*

"§ *1011. Adjusted basis for determining*
"         *gain or loss.*

"The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis (determined under section 1012 \* \* \*) \* \* \*, adjusted as provided in section 1016.

"§ *1012. Basis of property-cost.*

"The basis of property shall be the cost of such property, except as otherwise provided \* \* \*.

"§ *1016. Adjustments to basis.*

*"(a) General Rule.*—Proper adjustment in respect to the property shall in all cases be made—

"(1) for expenditures, receipts, losses, or other items, properly chargeable to capital account, \* \* \*

\* \* \* \* \*

"(2) in respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent of the amount—

"(A) allowed as deductions in computing taxable income under this subtitle or prior income tax laws, and

"(B) resulting (by reason of the deductions so allowed) in a reduction for any taxable year of the taxpayer's taxes under this subtitle (other than chapter 2, relating to tax on self-employment income), or prior income, war-profits, or excess-profits tax laws,

but not less than the amount allowable under this subtitle or prior income tax laws. \* \* \*"

\* \* \* \* \*

(i) [the loss in fair market value]; or

(ii) The amount of the adjusted basis prescribed in § 1.1011–1 * *. [Emphasis supplied]

*    *    *    *    *    *

Plaintiffs' position is that under § 165, the entire 1963 fire loss of their timber, which was not connected with their trade or business, may be deducted. Admittedly, there was no cost basis for tax purposes in the pine at the time of the fire based upon the original purchase price. However, plaintiffs pointed out that in 1963 they suffered an actual combined tangible loss of $56,058.13 from the market value of their pine timber, and that the purpose and intent of Congress was to allow deductions for such an actual loss.

Plaintiffs also rely upon the legislative history of the 1939 and 1953 Revenue sections of the Code to argue that "[a]pparently there is no expression of any intent on the part of Congress in regard to this particular subject of timber under consideration here *other than it would be up to the courts to correct any errors.*" [Emphasis supplied.]

Plaintiffs assert in support of this novel theory of judicial *correction* rather than interpretation of Acts of Congress, that "[t]here appears to be no legislative history on timber applicable to the subject at hand, *other than a directive to the Court*, which is reflected in the debate on adopting the 1939 Revenue Code * * *." [Emphasis supplied.] The only point of reference in this debate as to correction of the 1939 bill by the courts was after passage of the bill by the House of Representatives. When the bill reached the Senate, there was considerable debate as to the undue haste in passing the bill without even having it read. In the closing debate, Senator George commented, "As every Senator knows, we pass a tax act practically every year, *and any mistakes can be readily discovered and corrected.* It will, of course, permit a new point of departure for the convenience of the courts, and the

Congress itself in enacting new Revenue acts." [Emphasis supplied.] 84 Cong. Rec. 1056–57 (1939). The Revenue sections of the Code thus enacted in 1939 which are relevant to the question before us were reenacted in the 1954 Code without any discovery and correction of errors by Congress. We are not disposed to accept the justification offered by one Senator for the undue haste in the 1939 enactment as expressive of any legislative intent for this court to adopt "a new point of departure" from the clear revenue provisions of the Code involved herein, especially after Congress reiterated these same provisions in thet 1954 Act.

If, as plaintiffs contend, the purpose and intent of Congress in the Act to allow deductions for plaintiffs' actual fire loss over and above their 1963 adjusted cost basis of zero is "fairly obvious," then it is equally obvious that there is no need for them to also urge this court to correct any errors in the Act.

Plaintiffs state that the real issue under consideration, simply stated, is:

What is the Federal law regarding casualty losses for destroyed timber that can never acquire a cost basis?

By this statement, which is in accord with the stipulation of no cost basis in the timber at the time of the fire in 1963, plaintiffs have squarely placed the issue before the court. The Federal law to which we have referred as relevant to the issue is clear that a casualty loss for destroyed timber "that can never acquire a cost basis" can never be deducted from income under the pertinent revenue sections of the 1954 Code, *supra*.

The purpose of the loss deduction was not to provide for a loss of untaxed, potential income from growing timber, through its destruction by fire, as clearly stated in Rosenthal v. Commissioner of Internal Revenue, 416 F.2d 491 at 497 (2d Cir. 1969):

* * * the amount of the loss deduction allowable under this section is in every case limited to the lesser amount of either the decrease in market value of the property as a result of the

casualty or the taxpayer's basis in the property. Manifestly, the purpose of § 165 is not to allow the taxpayer a full deduction for every loss in market value his property suffers by reason of a casualty. The permissible deduction for such loss is always limited to the taxpayer's basis, or cost, in the property damaged. And the reason for this limitation is clear. Where the taxpayer suffers a loss from a destruction of market value greater than the cost of the property to him, that excess of value destroyed represents unrealized appreciation. And he may not claim a deduction for such loss because he has never recognized or paid a tax on the gain. In the extreme case, *where the taxpayer's basis in the property damaged is zero, and its entire market value represents unrealized appreciation, he is entitled to no deduction despite the size of the loss, large as it may be.* Consequently, taxpayers' argument that the Commissioner's result, by limiting the amount of their deduction to less than the full amount of their loss, would defeat the purpose of § 165 is simply incorrect. [Emphasis supplied.]

Plaintiffs' attempt to distinguish *Rosenthal, supra,* and other cases cited by defendant, and referred to in this opinion, but as counter authority have cited only the dissenting opinion in *Rosenthal, supra.* The dissent pointed out that " * * * Congress determined in the 1958 amendment to Section 1231 that the deduction for casualty loss was not to be reduced or minimized by reason that timber was entitled to capital gain treatment as Section 1231 property." *Id.* at 512. Without comment upon the merits of the dissent in this case, we cannot consider it as applicable here. The 1958 amendment to § 1231 of the Internal Revenue Code is not persuasive as to the intent of Congress in 1953, or in the reenactment of the Code in 1954, particularly where we note that the entire section applies only to "property used in trade or business."

The majority opinion in *Rosenthal, supra,* in dealing with the allocable basis of growing timber, pointed out:

* * * If the taxpayer had planted the young trees or otherwise obtained them at some cost, then he would have a basis allocable to those trees separate from his basis in the merchantable timber. See Treas.Reg. § 1.611–3 (d) (3). He would then be able to deduct his loss in the young trees to the extent of that basis or their decline in market value, whichever was less. If, on the other hand, the new growth was regeneration which had occurred at no cost to the taxpayer he would have no allocable basis, and would not be entitled to any deduction for the loss. * * * *Id.* at 498.

Plaintiffs' basis for the timber tract might have been annually reallocated on a unit basis as to the young trees planted. Defendant points out that natural growth could become subject to the annual unit reallocation when it reaches merchantable size, but in that event, taxpayers should be taxed upon the actual tangible increment in value as it accrues by growth. (However, we need not consider this hypothesis, in view of the stipulation that neither of plaintiffs had any cost or tax basis remaining in the timber which had grown from date of purchase to the time of the fire.) Plaintiffs offer as a possible alternative solution the interpretation of § 1016(a) (1) of the Code, which provides for an upward adjustment in the basis of the property to reflect receipts and other items properly chargeable to the capital account, to recognize as a justifiable capital charge, the increased value of growing timber. However, we are foreclosed in commenting upon these hypotheses by the stipulation by plaintiffs that " * * * neither had any cost or tax basis remaining in the pine at the time of the fire, which had grown since the date of purchase and which was destroyed by the fire, based upon each taxpayer's original purchase price."

In Helvering v. Owens, 305 U.S. 468, 471, 59 S.Ct. 260, 262, 83 L.Ed. 292 (1939), the Supreme Court said that the predecessor of § 1011 " * * * must be read as a limitation upon the amount of the deduction * * *." It held that the deduction for a nonbusiness loss cannot exceed the cost of the property or, "in the case of depreciable non-business property may not exceed the amount of the loss actually sustained in the taxable year, measured by the then depreciated value of the property." *See, also*, Alcoma Association v. United States, 239 F.2d 365 (5th Cir. 1956); Carloate Industries, Inc. v. United States, 354 F.2d 814 (5th Cir. 1966).

Plaintiffs' alternative agument is that a fire loss is not "a sale or other disposition of property" under § 165(b) because they did not convey or voluntarily dispose of the timber. However, § 165(b) provides that:

> * * * the basis for determining the amount of the deduction for *any loss* shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. [Emphasis supplied.]

The words "any loss" as used in this section cannot be narrowed by construction or interpretation to apply only to "the loss from the sale or other disposition of property"; if this construction were adopted, § 165(b) would be mere surplusage. A casualty loss need not be equated with a "sale" or "other disposition."

Plaintiffs have asked this court to issue an order expunging a Federal tax lien erroneously filed in the office of the Register of Deeds of Craven County, to which defendant answers by correctly asserting that this court has no jurisdiction to issue such an order. United States v. King, 395 U.S. 1, 89 S. Ct. 1501, 23 L.Ed.2d 52 (1969).

For the foregoing reasons, we conclude that plaintiffs are not entitled to recover, and the petitions are dismissed.

COLLINS, Judge (concurring):

Under the existing provisions of the Internal Revenue Code, there is no alternative but to concur in the result reached in this case. However, since this court cannot legislate, the need here is for Congress to change the existing law in regard to timber losses.[1]

This case is a perfect example of how easy it is for an individual, owning farm land or uncultivated land on which there has developed a natural growth of timber, to sustain a loss of considerable value as the result of fire or other casualty. The fact that this loss is nondeductible is due mainly to the fact that timber, unlike so many other commodities, can develop naturally without any human assistance, thus never incurring a cost basis. Justice demands that our laws provide a means of relief for persons, like plaintiff, who sustain such a casualty loss.

---

1. Senator Sam J. Ervin, Jr., introduced a bill relating to timber losses on January 28, 1970. It was read twice and referred to the Committee on Finance. The bill reads as follows:

"To amend the Internal Revenue Code of 1954 with respect to the amount of deduction allowable for casualty losses to timber.

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That (a) section 165(b) of the Internal Revenue Code of 1954 (relating to amount of deduction for losses) is amended by adding at the end thereof the following new sentence: 'In the case of a loss sustained with respect to timber, arising from fire, storm, or other casualty, the amount of the deduction for such loss shall not be less than the amount by which the fair market value of the timber immediately before the casualty exceeds the fair market value of the timber immediately after the casualty.'.

"(b) The amendment made by subsection (a) shall apply to taxable years ending after the date of the enactment of this Act."

S. 3349, 91st Cong., 2d Sess. (1970).