T.C. Memo. 2003-129


UNITED STATES TAX COURT


RUDOLPH H. BEAVER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10305-01.                    Filed May 2, 2003.


        For 1993, P claimed a $2,816,540 capital loss on
his sale of H stock, believing that the loss in the
value of the stock was caused by the market.  In 1997,
P discovered that the loss in the value of the stock
was attributable to a theft.  In 1997, P claimed the
$2,816,540 loss as a theft loss.  At trial, P did not
establish that any portion of the capital loss claimed
in 1993 remained for carryover after that year.
        <u>Held</u>:  P is not entitled to deduct in 1997 any of
the loss as a theft loss.  In that P has failed to
establish that any portion of the capital loss remained
for carryover after 1993, P has not established that he
had in 1997 any basis in the H stock that would allow
him to deduct for 1997 a theft loss with respect to the
H stock.

John F. Lyle III, Gwen D. Skinner, and Mark M. Gibson, for petitioner.

Horace Crump, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge: Respondent determined deficiencies of $257,442, and $406,438 in petitioner's 1997 and 1998 Federal income taxes. We decide whether petitioner may deduct for 1997 any portion of a theft loss that he had previously deducted for 1993 as a capital loss. We hold he may not.[1] Unless otherwise noted, section references are to the applicable versions of the Internal Revenue Code. Rule references are to the Tax Court Rules of Practice and Procedure. Amounts are rounded to the dollar.

## FINDINGS OF FACT

A. Background

Some facts were stipulated. The stipulated facts and the exhibits submitted therewith are incorporated herein by this reference. We find the stipulated facts accordingly. Petitioner resided in Albertville, Alabama, when he petitioned the Court. He filed a 1997 Federal income tax return on which he claimed a

---

[1] On the basis of our holding, we also hold as a computational matter that petitioner does not have a net operating loss in 1997 that he may carry over to 1998.

$2,816,540 theft loss. Respondent disallowed that loss in a notice of deficiency sent to petitioner on May 17, 2001.

B.  Petitioner's Investment in HPI Stock

Petitioner began investing in stock in or about 1990. At or about that time, he started receiving unsolicited phone calls from Jeffrey Weissman (Weissman), Andrew Bressman (Bressman), and other brokers with the brokerage firm of D.H. Blair & Co., Inc. (Blair). Weissman suggested to petitioner that he invest in the initial public offering of a company managed by Weissman's father, Martin (Martin). Weissman guaranteed to petitioner that he would double his money. Petitioner invested $25,000 in the company and later realized from his investment a profit of approximately $20,000. Afterwards, Weissman and Bressman persuaded petitioner to invest in the publicly traded stock of Health Professionals, Inc. (HPI), a corporation for which Martin served as the chairman from its (and its predecessor's) founding in the 1970s until May 1992.

In August 1992, Weissman and Bressman left Blair and founded A.R. Baron & Co., Inc. (Baron), a brokerage firm of which Bressman was the president. Weissman and Bressman continued to persuade petitioner to invest in HPI without disclosing the fact that HPI's predecessor had previously been convicted of fraud. From February 12 through June 8, 1993, petitioner purchased 307,900 shares of HPI stock at a total cost of $3,527,002. On

June 24 and 25, 1993, petitioner sold all of those shares at a loss of $2,816,540. Petitioner claimed this loss as a capital loss for 1993. Four years later, petitioner reported on his 1997 Federal income tax return that he had at the beginning of 1997 a capital loss carryover of $460,486. The record does not specify the source of that carryover.

C. Administrative Proceedings by the SEC

During 1996, the Securities and Exchange Commission (SEC) instituted administrative proceedings against Weissman, Martin, Baron, and Bressman (collectively, the brokers) in connection with their sale of HPI stock. The SEC found that the brokers manipulated the market for HPI stock from October 1991 through June 1993 and effectively controlled the market for HPI stock. See SEC Release No. 42103 (Nov. 4, 1999); SEC Release No. 37831 (Oct. 17, 1996); SEC Release No. 37661 (Sept. 9, 1996); SEC Litigation Release No. 14987 (July 23, 1996).

D. Indictment

On May 13, 1997, the District Attorney for the County of New York, New York, announced the criminal indictment of Baron, Bressman, and 12 other members of Baron. Among other things, the 174-count indictment charged the defendants with violating the New York Enterprise Corruption Statute, NY Penal Law, sec. 460.20 (Consol. 1993). In the fall of 1997, Baron pleaded guilty to the charges filed against it. On December 15, 1997, Bressman pleaded

guilty to New York felony charges of enterprise corruption and grand larceny.

OPINION

Petitioner argues that he may deduct for 1997 a theft loss of $2,816,540. Petitioner recognizes that he deducted this loss as a capital loss in 1993. Petitioner asserts that the fact that he discovered in 1997 that the loss was attributable to a theft means that he now can deduct the loss as a theft loss for 1997.

Respondent's determinations in the notice of deficiency are presumed correct, and petitioner must prove those determinations wrong in order to prevail. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner also must prove that he is entitled to his claimed theft loss deduction. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Whereas section 7491(a) in certain cases shifts the burden of proof to the Commissioner, we conclude that this is not one of those cases. Among other things, we note that petitioner has neither asserted that respondent bears the burden of proof as to the issue at hand, nor disputed respondent's assertions that the burden of proof lies with petitioner.

Petitioner's theft loss deduction requires that we focus primarily on section 165. Section 165(a) allows a deduction for any loss sustained during the taxable year that is not compensated for by insurance or otherwise. In the case of an

individual such as petitioner, however, losses are deductible only to the extent that they (1) were incurred in a trade or business, (2) were incurred in a transaction entered into for profit, or (3) arose from a casualty or a theft. Sec. 165(c)(3). For this purpose, the amount of a theft loss deduction generally equals the lesser of (1) the reduction in the property's fair market value from the time immediately before the theft until the time immediately after the theft, or (2) the property's cost or other basis. See sec. 1.165-7(b)(1), Income Tax Regs.; see also sec. 1.1011-1, Income Tax Regs. Whereas a loss in general is deductible in the year in which it is sustained, sec. 165(a), a loss from a theft is deductible in the year in which it is discovered, sec. 165(e).

The parties dispute primarily whether the brokers' activities amounted to a "theft" committed against petitioner under applicable law, which the parties agree is the law of New York. We need not decide this dispute. Even assuming arguendo that petitioner's loss was attributable to a theft that was discovered in 1997, he would still not prevail because he has failed to establish that he had any basis in HPI stock that he could deduct as a theft loss for 1997.

Petitioner claimed for 1993 a capital loss of $2,816,540 from the sale of HPI stock and reported for 1997 that he had a $460,486 capital loss carryover as of the beginning of that year.

We conclude from this representation that petitioner has utilized as of January 1, 1997, all of the capital loss that he claimed in 1993, but for, at the most, $460,486. As to the $460,486, the record does not indicate the source of that amount. The record does not contain, for example, any of petitioner's tax returns from 1993 to 1996 or any credible evidence as to the gains or losses from petitioner's capital transactions in years before 1997. Whereas the $460,486 could possibly stem from the capital loss on HPI stock that petitioner claimed in 1993, it could just as easily be a carryover from a capital loss sustained in 1994, 1995, or 1996.

A loss from the sale or other disposition of property cannot exceed the taxpayer's basis in the property, sec. 1.165-1(c), Income Tax Regs., and a taxpayer such as petitioner who cannot prove his basis in his property cannot compute a theft loss deduction, see Millsap v. Commissioner, 46 T.C. 751, 760 (1966), affd. 387 F.2d 420 (8th Cir. 1968); Towers v. Commissioner, 24 T.C. 199, 239 (1955), affd. on other grounds sub nom. Bonney v. Commissioner, 247 F.2d 237 (2d Cir. 1957); Heckett v. Commissioner, 8 T.C. 841 (1947). We believe that this burden requires that petitioner prove that he did not recognize in one or more years before 1997 as a capital loss what he now claims as a theft loss. Cf. Associated Dentists v. Commissioner, T.C. Memo. 1998-287 (citing, among other cases, United States v.

Olympic Radio & Television, Inc., 349 U.S. 232, 235 (1955), and

Jones v. Commissioner, 25 T.C. 1100, 1104 (1956), revd. and

remanded on other grounds 259 F.2d 300 (5th Cir. 1958), for the

requirement that a taxpayer seeking to deduct a net operating

loss (NOL) carryover must establish that the NOL was properly

applied in the later year).  To the extent that petitioner has

recognized before 1997 the full capital loss claimed on the stock

for 1993, he has recovered his entire basis in that stock so that

he now lacks any basis to deduct as a theft loss for 1997.  See,

e.g., Carloate Indus., Inc. v. United States, 354 F.2d 814 (5th

Cir. 1966); United States v. Koshland, 208 F.2d 636 (9th Cir.

1953); Robinson v. Commissioner, 12 T.C. 246 (1949), affd. 181

F.2d 17 (5th Cir. 1950).  Given the record at hand, we cannot

determine in any manner what portion, if any, of the capital loss

has not been recognized.[2]

We conclude that petitioner is not entitled to any of the

claimed theft loss deduction and hold for respondent.  In so

concluding, we have considered all arguments made by the parties

---

[2] Petitioner testified that he has never received any benefit from his deduction of the $2,816,540 for 1993.  On the basis of the record as a whole, including our observation and perception of petitioner while he testified at trial, we find this testimony incredible and decline to rely upon it. Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 84 (2000), affd. 299 F.3d 221 (3d Cir. 2002).

and have found those arguments not discussed herein to be irrelevant and/or without merit.[3]  Accordingly,

                              <u>Decision will be entered</u>

                      <u>for respondent</u>.

---

[3] Although not cited by either party, we also have considered <u>B.C. Cook & Sons, Inc. v. Commissioner</u>, 59 T.C. 516 (1972).  That case is factually distinguishable from the case at hand.  First, in <u>B.C. Cook & Sons</u>, the taxpayer's inclusion of the fictitious purchases in its cost of goods sold was erroneous in that the taxpayer had not made an actual economic outlay for those purchases.  Second, that case involved the claiming of two deductions for two different items; i.e., (1) the cash for the embezzlement for which the deduction was claimed and (2) the fictitious purchases which were erroneously taken into the computation of costs of goods sold.