EWALD IRON COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 81919. Promulgated April 29, 1938.

*E. J. Wells, Esq.*, for the petitioner.

*Jonas M. Smith, Esq.*, for the respondent.

#### OPINION.

HILL: Respondent determined a deficiency in petitioner's income tax for the year 1933 in the amount of $1,712.61, from which petitioner appeals and assigns as error the refusal of respondent to allow a deduction of $11,127.79 as a loss sustained upon machinery alleged to have been discarded during the taxable year.

Petitioner is a Kentucky corporation, with its principal office at Louisville. In the year 1922 petitioner began the manufacture of drilled staybolts, which were sold to railroads and locomotive companies for use in railroad locomotives. Petitioner continued to manufacture such bolts until about October 1, 1933, when it went out of the hollow drilled bolt business entirely. Petitioner ceased to manufacture the bolts for several reasons. The first was because there had always been a large loss in this department of its business, resulting from the fact that petitioner could not charge a greater differential over the price of solid iron bars than its competitors charged, which was 3 cents per pound additional, and petitioner found it cost about 6 cents per pound additional. Petitioner manufactured the bolts only for the protection of its solid iron business, and when the N. R. A. first came into being it became apparent that the petitioner would have to operate under some other code if it continued to manufacture hollow bolts. About that time petitioner was approached by the Flannery Bolt Co. with the proposition that petitioner withdraw from the manufacture of bolts under an arrangement whereby the Flannery Bolt Co. would manufacture and supply bolts to petitioner's customers out of petitioner's iron. A similar arrangement was made with the American Locomotive Co., which also manufactured hollow staybolts.

Within two or three months after October 1, 1933, when petitioner discontinued the manufacture of bolts, all the machinery formerly used for that purpose, except a single machine, was moved over to one corner of the drilling plant or department. A vertical heading machine, which was very heavy, was not moved but left in position.

In respect of the machinery used by petitioner in the manufacture of bolts, the parties have stipulated the date of purchase of each machine, depreciation, and salvage value as of January 1, 1933, and agree that if petitioner is entitled to any deduction for loss of useful value, the amount so allowable is $11,127.79. The sole issue submitted for decision here is whether or not petitioner in fact abandoned its machinery during the taxable year and thereby sustained a loss of the residual value, less salvage, in the amount above stated, so as to render such amount properly allowable as a deduction from gross income.

Petitioner contends that it discarded and abandoned its bolt machinery in 1933, with the intention of never again engaging in that line of business; that it thereby sustained a loss of the stipulated residual value, less salvage, and is entitled to a deduction for loss of useful value in the amount claimed. Respondent denied the deduction substantially on the ground that abandonment was not established, and hence there was no present loss sustained on that account. The evidence adduced, we think, supports respondent's position.

Whether or not there has been an abandonment of property depends upon the intention of the owner, coupled with the act of abandonment, both of which are to be ascertained and determined from all the surrounding facts and circumstances. *Belridge Oil Co.*, 11 B. T. A. 127, 137; *I. G. Zumwalt*, 25 B. T. A. 566. We shall not here attempt to make any specific determination in respect of petitioner's intention, for the reason that the evidence, in our opinion, is wholly insufficient to show an act of abandonment.

While abandonment necessarily involves nonuse, proof of nonuse is not sufficient to constitute abandonment. *I. G. Zumwalt, supra.* Petitioner discontinued the manufacture of bolts in 1933, primarily because that department of its business was being operated at a loss in order to protect its solid iron business. Such discontinuance was effected under arrangements made with other companies whereby petitioner could avoid further operating loss from the manufacture of bolts without injury to its solid iron business. But petitioner did not scrap its bolt machines; they were not even removed from the drilling plant or department. The heavy vertical heading machine was left in its original position, and the smaller machines were stored in one corner of the plant. By this action it is apparent that, if the arrangement made with the Flannery Bolt Co. and the

American Locomotive Co. to supply petitioner's customers with bolts made of its iron, had thereafter proved unsatisfactory to petitioner, or if petitioner had desired to do so for any other reason, it could have resumed the manufacture of bolts, with little delay. The necessary machinery was on hand and available for such purpose at any time. Petitioner made no effort to scrap and sell the machines, so far as the record shows, notwithstanding they had an admitted salvage value of $3,750. We think petitioner has not shown any loss of useful value.

Respondent has determined that petitioner did not abandon its bolt machinery during the taxable year, and petitioner has the burden of proving by satisfactory evidence that such determination is erroneous. This, in our opinion, petitioner has failed to do. The deficiency determined by respondent is approved. Cf. *Williamson Veneer Co.*, 10 B. T. A. 1259; *Flexible File Co.*, 13 B. T. A. 909; affd., 41 Fed. (2d) 997; *Fox River Paper Co.*, 28 B. T. A. 1184, 1200.

*Judgment will be entered for the respondent.*