The **CITIZENS BANK OF WESTON,** Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Respondent.

No. 7567.

United States Court of Appeals Fourth Circuit.

Argued Jan. 24, 1958.

Decided Feb. 14, 1958.

**426**

Robert A. Littleton, Washington, D. C., for petitioner.

Marvin W. Weinstein, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before PARKER, Chief Judge, and SOBELOFF and HAYNSWORTH, Circuit Judges.

SOBELOFF, Circuit Judge.

A controversy has arisen between The Citizens Bank of Weston, West Virginia, and the Commissioner of Internal Revenue because of his disallowance of a deduction for a portion of the loss claimed to have resulted from flood damage.

In 1930 The Citizens Bank constructed a stone bank building consisting of one floor at street level, a mezzanine, and a basement. The basement contained a heating plant and facilities for the storage of records and supplies. In June, 1950, the West Fork River flooded approximately twenty-five feet above its normal level and inundated the bank's basement, destroying records and supplies and certain equipment there located. The building itself suffered no serious damage other than a slight dampness which persists in the walls of the basement and causes the paint to scale. The bank carried no insurance for flood damage. The basement still houses the heating plant; but because the bank fears that flooding may recur and again destroy its records, which are irreplaceable, it has not since 1950 used the basement for storage. No new storage facilities have been constructed; the records have been kept on the main and mezzanine floors for the past seven years, where banking activities are carried on. Since the 1950 flood, a flood control program for the West Fork River has been planned and is under study by the United States Army Engineers, but the plan has not been definitely adopted.

The flood of 1950 is said to have been the worst suffered by the town of Weston since the one which occurred in the year 1888. Since 1950, as before that year, the river has overflowed, but not to a level sufficient for water to enter the bank's basement.

Deductions for damage to equipment and supplies were allowed by the Commissioner of Internal Revenue, but he disallowed an item of $76,005.07 claimed by the bank as a deduction on account of the forced discontinuance of the use of the basement for record storage. The bank measured its loss by undertaking to show the decline in the fair market value of the bank building by comparing estimated values immediately before and after the flood. The Tax Court having upheld the Commissioner, the bank has appealed.

■ Section 23(f) of the Internal Revenue Code of 1939 provides, in the case of a corporation, for deductions from gross income for losses which have been sustained during the taxable year and have not been compensated by insurance or otherwise.[1] The bank contends

1. Inasmuch as Section 29.23(f)–1 of Treasury Regulations 111 makes Sections 29.23(e)–1 to 29.23(e)–5 of the Regulations in general applicable to corpora-

that the flood of 1950 effectually destroyed the usefulness of the basement space as a safe place to store important bank records which it is required by law to retain, and that, in this sense, an element of value has been lost through casualty, for which it is entitled to a deduction.

The Commissioner's position was and is that as the flood has not materially altered the physical condition of the basement, there has been no loss of property; and further, that although the bank's officers testified that it has permanently abandoned the basement, what is shown is merely a present non-use, plus a retention of dominion so that it may upon future reconsideration again use the space as fully as before; and this is not enough to give rise to a recognized loss for tax purposes. Cf.: Ewalt Iron Co., 1938, 37 B.T.A. 798; W. B. Davis and Son, Inc., 1945, 5 T.C. 1195, 1219; Mid-State Products Co., 1954, 21 T.C. 696.

As the Tax Court pointed out, physically the basement is substantially the same as before the flood. While since 1950, there has been danger of recurring floods, the same may also be said of the entire period since the earlier flood in 1888, especially in the interval from the construction of the building, in 1930, until the flood of 1950. The Tax Court held that

the fear of a future loss furnishes no basis for a current deduction; and even if such fear diminished the market value—a fact not found by the Tax Court—this would be a mere fluctuation, for which no deduction may be made until a loss is actually realized by the sale or other disposition of the property. In the Court's view, until such an event occurs, there has been no completed and closed transaction.

▮ We think the Tax Court's conclusion correct. The issue is not to be decided merely by reference to the terms adopted—"non-use" or "abandonment." We must look to the surrounding circumstances to determine, regardless of descriptive language, whether there has been such a final and irretrievable relinquishment as to entitle the owner to a deduction under the law.

The bank places reliance upon the case of Mattie Fair v. Commissioner, 27 T.C. 866, 1957 C.C.H. Tax Decisions 2151, Dec. 22, 269, where a deduction was allowed under Section 23(o) of the Internal Revenue Code of 1939, for the value attributable to a charitable gift of the right to construct additional stories in the space above the roof of a building the foundation of which was adequate to support the increased burden. The

---

tions as well as individuals, we quote the relevant sections of the statute and the regulations. They are as follows:

Internal Revenue Code of 1939:

"§ 23. Deductions from gross income.

"In computing net income there shall be allowed as deductions:

   *     *     *     *     *

"(e) *Losses by individuals.*—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

   *     *     *     *     *

"(3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, or from theft. No loss shall be allowed as a deduction under this paragraph if at the time of the filing of the return such loss has been claimed as a deduction for estate tax purposes in the estate tax return.

"(f) *Losses by corporations.*—In the case of a corporation, losses sustained during the taxable year and not com-

pensated for by insurance or otherwise.
   *     *     * " 26 U.S.C.1952 ed., Sec. 23.

Treasury Regulations 111, promulgated under the income tax provisions of the Internal Revenue Code of 1939:

Sec. 29.23(e)–1. *Losses by Individuals.*— * * *

"In general losses for which an amount may be deducted from gross income must be evidenced by closed and completed transactions, fixed by identifiable events, bona fide and actually sustained during the taxable period for which allowed. Substance and not mere form will govern in determining deductible losses. Full consideration must be given to any salvage value and to any insurance or other compensation received in determining the amount of losses actually sustained. * * *

"Sec. 29.23(f)–1. *Losses by Corporations.*— * * * The provisions of sections 29.23(e)–1 to 29.23(e)–5, inclusive, * * * are in general applicable to corporations as well as individuals. * *"

Tax Court, it is true, ruled that the donated air rights constituted property; but the case is not helpful here, where the problem is as to the definiteness and finality of the claimed abandonment of the basement space. So also, we do not understand the Tax Court to dispute the principle established in United States v. Causby, 1946, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206, cited by the petitioner, that invasion of the air above land by the flight of airplanes of such altitude and frequency as to destroy the normal use of the land for a chicken farm, constituted a taking of the property in the constitutional sense. The Tax Court in this case did not deny that the bank's right to use the basement space is property; its holding on the facts is that the use of the space in the basement is not finally and irreversibly terminated, and that while the bank now considers it imprudent to use the basement for storage of records, it can and does still use it for the heating plant, and may in the future resume its use for record storage.

We need not here spell out in what other circumstances the utter hopelessness of any future use of property may become so manifest, even in the absence of physical destruction, as to call for a conclusion of permanent abandonment. Cf. United States v. Hardy, 4 Cir., 1935, 74 F.2d 841. We cannot say that the Tax Court was clearly erroneous in concluding otherwise on this record. The Court was not unreasonable in viewing the case as one disclosing the threat of flood at all times since 1888, and certainly since the building was erected in 1930; nor was it unreasonable in considering the hazard not more imminent after June, 1950, than before. Moreover, while the flood control plan is still not in execution, it is a factor which the Tax Court may consider in appraising the probability or improbability of the permanency of the bank's decision not to store records in its basement.

In a doubtful situation like this, if a deduction were allowed from the current year's earnings and the tax basis of the property were correspondingly reduced, then logically, if the flood control plan were achieved in a future year, restoration of the deduction would be required. Then might come other turns of the wheel, necessitating under the rule urged by the petitioner still other adjustments up or down. The scheme of our tax laws does not, however, contemplate such a series of adjustments to reflect the vicissitudes of the market, or the wavering values occasioned by a succession of adverse or favorable developments. United States v. White Dental Mfg. Co. of Pennsylvania, 1927, 274 U.S. 398, 401, 47 S.Ct. 598, 71 L.Ed. 1120; Weiss v. Wiener, 1929, 279 U.S. 333, 335, 49 S.Ct. 337, 73 L.Ed. 720. Normally, the loss involved in impaired usefulness is recognized on sale or other disposition. It may also be recognized as deductible when an event has definitely set at rest the possibility of future use. See: Williams Furniture Corporation, 1941, 45 B.T.A. 928. But where, as here found, the possibility is not remote that the owner will alter its decision not to use a portion of the property for a particular purpose, no deduction is allowable.

Affirmed.