George E. CONNER and Dorothy P. Conner, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 29072.

United States Court of Appeals, Fifth Circuit.

March 12, 1971.

Supplemental Opinion May 19, 1971.

Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., Daniel L. Penner, Atty., Tax Div., Dept. of Justice, Fort Worth, Tex., James R. Gough, Asst. U. S. Atty., Houton, Tex.,

3. "[F]indings on evidence presented in the trial of the general issue." 399 U.S. at 301, 90 S.Ct. at 2135.

Daniel B. Rosenbaum, Atty., Dept. of Justice Tax Div., Washington, D. C., Elmer J. Kelsey, Atty., Department of Justice, Washington, D. C., Anthony J. P. Farris, U. S. Atty., George R. Pain, Asst. U. S. Atty., Houston, Tex., for appellant.

Robert L. Waters, Harold A. Chamberlain, Houston, Tex., Chamberlain & Hrdlicka, Houston, Tex., of counsel, for appellees.

Before COLEMAN, INGRAHAM, and WILKEY,* Circuit Judges.

COLEMAN, Circuit Judge:

The Internal Revenue Service determined that George and Dorothy Conner, plaintiff-taxpayer-appellees, had understated their income taxes for the years 1965 and 1966 in the sum of $22,359.04. They paid the amount demanded, unsuccessfully claimed a refund from the Internal Revenue Service, successfully filed this suit, and the Government appeals. The judgment of the District Court 303 F.Supp. 1187, will be affirmed in part and reversed in part and the case remanded for a recalculation of the amount due the taxpayers.

There are two important issues in the appeal.

The first is whether a loss occasioned by fire which partially destroys a dwelling is to be measured by the market value of the property immediately before and immediately after the casualty, or by the actual cost of restoring the property to its condition existing immediately prior to the loss.

The second is whether insurance company reimbursement of the cost of renting another dwelling pending repairs to the damaged structure is includable as gross income in the taxpayers' personal income tax return.

I

FACTS

The taxpayers, husband and wife, purchased a home in Houston, Texas, and began occupancy in September, 1961. On September 10, 1965, the structure was virtually destroyed by fire.

Immediately after the fire, the taxpayers began accepting bids for the reconstruction of the home to its pre-fire condition. Mr. John P. Mason of the J. V. Daugherty Construction Company, which dealt almost exclusively with restoration of damaged property, estimated that the home could be fully restored to its pre-fire condition for $46,321.41. Mr. Charles Conner, taxpayers' nephew, who was connected with the Uvalde Construction Company, estimated that it would take $49,322 to render the property like new. The nephew was awarded the reconstruction contract and completed the work during the first week of April, 1966, at a cost of $66,395.35.

During the time the house was being reconstructed the taxpayers filed a fire loss claim against the Hartford Fire Insurance Company for $92,074.23, but agreed to accept an aggregate payment of $88,487 with respect to the coverage carried by that company. This $88,487 was apportioned as follows:

(1) $51,671.35 for "replacement cost coverage" to the residence.

(2) $24,491.95 for damage to personal property in the residence.

(3) $7,657.88 for miscellaneous expenses included under the "dwelling" coverage of the policy, such as payments for night watchmen and the like, but which did not deal with items of damage to the house as such.

(4) $4,665.82 for reimbursement for out-of-pocket living expenses incurred as a consequence of the fire, including $4,200 spent for rent of a temporary residence

* Judge of the United States Court of Appeals for the District of Columbia, sitting by designation.

while the damaged residence was being repaired.

The $4,665.82 item was paid under a policy provision which read as follows:

"ADDITIONAL LIVING EXPENSES AND RENTAL VALUE: If Loss resulting from any of the perils insured against hereunder renders the insured property wholly or partially untenantable, the company agrees to pay . . .

"a. the necessary and reasonable increase in living expense to continue as nearly as practicable the normal standard of living of the insured's household caused by such untenantability."

On their income tax return for the year 1965, the taxpayers claimed a casualty loss deduction by reason of the fire in the amount of $41,282.65. This loss was calculated in the following manner: The taxpayers declared that the fair market value of their residence before the fire was $118,054, that the fair market value of the property after the fire was $25,000, resulting in a diminution in fair market value of $93,054. That amount was then reduced by $100, that portion of the personal casualty loss which is non-deductible, and further reduced by the amount of the insurance recovery, calculated as $51,671.35 [(1) above]. This resulted in a net loss claim of $41,282.65, as above stated.

Or, graphically:

| | |
|---|---|
| Fair market value before fire | $118,054.00 |
| Fair market value after fire | 25,000.00 |
| Loss in fair market value due to fire | $ 93,054.00 |
| Portion of loss non-deductible | − $100.00 |
| Gross loss deductible | $92,954.00 |
| Amount of insurance recovered | −51,671.35 |
| Net loss deductible | $41,282.65 |

On their tax return for the year 1968, the taxpayers did not include any amount as income by reason of the $4,665.82 out-of-pocket living expenses reimbursed by the insurance company.

Upon audit of the taxpayers' tax returns for the years 1965 and 1966, the Internal Revenue Service took the position that the amount recovered from the insurance company reimbursed the loss suffered in 1965, hence no loss could be claimed.

The Internal Revenue Service further held that the taxpayers must include in their income for the year 1966 the $4,665.82 paid them by the insurance company as reimbursement for rent paid on another home while waiting for the damaged home to be repaired.

The Internal Revenue Service then collected additional taxes and interest from the taxpayers for 1965 in the amount of $19,913.82 and for 1966 in the amount of $2,445.22. These are the amounts that taxpayers sought to recover in the District Court. Certain amounts of interest were not paid with respect to the assessment, and the Government timely brought its counterclaim for these amounts.

## II

## THE CONTENTIONS OF THE PARTIES

The taxpayers offered substantial evidence to show that immediately before the fire the house and lot had a fair market value ranging between $115,000 and $120,000. Similar evidence was introduced to show that the fair market value of the property after the fire was between $21,500 and $26,500. It appears to be undisputed that the value of the lot alone was $21,500.

The taxpayers contended as a matter of law that the payment to them of $4,200 by the insurance company to reimburse the cost of rent while the former home was being rebuilt did not have to be included in their gross income because the receipt of those funds did not *consti-*

*tute a gain.* The District Court sustained this position.[1]

As to the casualty loss deduction, the Government urges that the deduction is limited to the amount of loss actually sustained by the taxpayers *as evidenced by a closed and completed transaction;* that mere fluctuations in the fair market value of the damaged property which follow the casualty, but which are temporary and hypothetical in nature and are never actually sustained by the taxpayers, are not properly included in the calculation of the loss. It is vigorously insisted that since the home was actually restored the casualty loss should have been limited to the amount necessary to accomplish the restoration.

As to the $4,200 received by the taxpayers as reimbursement of rental expenses pending the restoration, the Government contends that it was includable in taxpayers' gross income because it was an accession to wealth under § 61(a) of the Internal Revenue Code and not specifically excluded by another section of the code, and that the money was paid to cover personal living and family expenses which are non-deductible personal expenditures.

### III

### THE ISSUES

At the trial, in support of its position, the Government requested that the jury be instructed as follows:

"Although the amount of a casualty loss is generally measured by the difference between the before and after fair market value, less any insurance proceeds received as result of the casualty, if the damaged property has been restored to its original condition the cost of restoration is the amount of the casualty loss.

"You are instructed that if you find that the plaintiffs' home was restored

to its pre-fire condition, or could have been restored to its pre-fire condition, for the amount of the insurance recovery, i. e., $51,671.35, you must find that the plaintiffs suffered no deductible casualty loss under the income tax laws. Substance must govern over form, and for an asserted loss to be deductible for income tax purposes, it must be actual and real, and not hypothetical."

■ The appellate appendix is silent as to any objections entered at the close of the charge as required by Rule 51 of the Federal Rules of Civil Procedure, nor does the appendix show that attorneys were given an opportunity to object as required by said rule. We can only infer, although the appendix does not show it, that it was agreed between the parties and the trial court that the rejection of the proposed instructions would without further formality be preserved on appeal. This, however, is not the way to try a case which may terminate in the Court of Appeals. Rule 51 should be scrupulously complied with and the objections clearly stated at the trial level if error in the instructions is to be urged as the basis for reversal. The rule so requires: "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection".

We do not decide this case on the failure to give these instructions. Whether the trial court, as a plain matter of law, submitted the case to the jury under the correct theory for the calculation of a casualty loss remains very much in the case.

The District Court specifically instructed the jury as to the meaning of "fair market value", and submitted the casualty loss issue to the jury for a spe-

---

1. The remaining $465.82 which the insurance company paid to cover living expenses was not itemized or explained by the taxpayers and the District Court did not consider it in determining the amount excludable from gross income. On this appeal taxpayers do not argue that the $465.82 was not includable as gross income.

cial verdict consisting of answers to the following questions:

"QUESTION NO. 1

"What do you find to have been the fair market value of the residence of Mr. and Mrs. Conner at 5559 Holly Springs on September 10, 1965 before the fire?

"You will answer this question in dollars and cents.

[The jury answered, $115,000.]

"QUESTION NO. 2

"What do you find to have been the fair market value of the residence of Mr. and Mrs. Conner at 5559 Holly Springs on September 10, 1965 after the fire in its damaged condition?

"You will answer this question in dollars and cents.

[The jury answered, $44,000.] "

The remaining issue was decided by the District Court without the intervention of a jury in a written memorandum and order in which the Court stated:

"It is apparent that plaintiffs in this case realized no gain in connection with the reimbursement by the insurance company of the rental payments in the total amount of $4,200.00. If there was any income in the ordinary and real sense of the word realized by anyone relating to these payments, it was the owner of the house that plaintiffs rented. With respect to the reimbursement by the insurance company to plaintiffs of the $4,200.00, plaintiffs were no more than a conduit through which these funds passed. * * *

"The Court is unable to perceive the logic of including this sum of money, $4,200.00, in plaintiffs' gross income for the taxable year involved and holds that the Internal Revenue Service erroneously included that amount in plaintiffs' gross income for the year 1966, and plaintiffs should recover the resulting overpayment of income taxes for that year, together with interest."

Taxpayers' taxes for the year 1966 were recalculated accordingly and final judgment was rendered for the refund so calculated.

The Government has appealed from the judgment entered on the jury's special verdict concerning the casualty loss issue as well as the judgment entered on the District Court's opinion concerning the rental reimbursement.

## IV

## THE DECISION

■ We are thus brought face to face with a decision as to whether, under the facts of this case, (1) the District Court committed reversible error in expressly failing to limit the fire loss tax deduction to the cost of repairing or restoring the damaged property to its pre-casualty condition; (2) the District Court erred in holding that the amount received by taxpayers from an insurance company to cover certain of their living expenses incurred as a result of fire damage to their home was not includable in their gross income?

The applicable section of the Internal Revenue Code of 1954 and the Regulation in question are as follows:

"Internal Revenue Code of 1954 (26 U.S.C.):

"§ 165.  Losses

"(a) General rule.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

\*    \*    \*    \*    \*    \*

"(c) Limitation on losses of individuals.—In the case of an individual, the deduction under subsection (a) shall be limited to—

\*    \*    \*    \*    \*    \*

"(3) [as amended by Sec. 208(a), Revenue Act of 1964, P.L. 88–272, 78 Stat. 19] losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual aris-

ing from each casualty, or from each theft, exceeds $100. For purposes of the $100 limitation of the preceding sentence, a husband and wife making a joint return under section 6013 for the taxable year in which the loss is allowed as a deduction shall be treated as one individual. No loss described in this paragraph shall be allowed if, at the time of filing the return, such loss has been claimed for estate tax purposes in the estate tax return.

\* \* \* \* \* \*

"Treasury Regulations on Income Tax (1954 Code) (26 C.F.R.):

"Sec. 1.165.7 Casualty losses.

"(a) In general—\* \* \*

"(b) Amount deductible—(1) General rule. In the case of any casualty loss whether or not incurred in a trade or business or in any transaction entered into for profit, the amount of loss to be taken into account for purposes of section 165(a) shall be the lesser of either—

(i) The amount which is equal to the fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty; or

(ii) The amount of the adjusted basis prescribed in § 1.1011–1 for determining the loss from the sale or other disposition of the property involved."

In Helvering v. Owens, 1939, 305 U.S. 468, 59 S.Ct. 260, 83 L.Ed. 292, Owens purchased an automobile for $1825 and subsequently wrecked it. The car was not insured. Prior to the accident its fair market value was $225; after the accident the fair market value was $190. Owens claimed a casualty loss deduction of the difference between his *original cost* and the fair market value after the accident. The Internal Revenue Service denied this amount and said that the deduction should be $35, or the difference in the fair market value immediately before and that value immediately after the accident. The Court held that the Internal Revenue Service was correct and said that "in the case of depreciable non-business property [the deduction] may not exceed the amount of the loss actually sustained in the taxable year, measured by the then depreciated value of the property". It is at once to be noted that this case presented no issue as to the cost of restoration to the condition existing immediately prior to the casualty.

The Fifth Circuit had occasion to consider the problem in Alcoma Association v. United States, 1956, 239 F.2d 365. *Alcoma* was concerned with hurricane damage to depreciable citrus groves. Obviously, there was no way to restore the groves to the condition existing immediately prior to the hurricane. Even so, the Court said, 239 F.2d at 367:

"However, this question [the computation of the loss] has not been left entirely open. The Supreme Court's decision in Helvering v. Owens, 305 U.S. 468, 59 S.Ct. 260, 83 L.Ed. 292, has explicitly determined that allowable casualty loss is to be the actual decrease in the market value of the property, measured by the difference in market values immediately before and immediately after the casualty, but limited to the total adjusted basis of the property; in that case this formula was actually applied in a partial loss situation.

"The *Owens* case involved property not used in trade or business and thus not depreciable (though casualty losses were deductible under § 23(e) (3)), and the Commissioner attempts to distinguish it on that ground. It is true that the Supreme Court explicitly stated that it was there dealing with non-business property but this evidently merely referred to the fact that the particular formula there contended for by the taxpayer, and rejected by the Court, was one really objectionable only where applied to non-depreciable property, for it would have allowed the deduction of all past, nonallowable depreciation as part of the casualty loss;

the formula there advanced by the Commissioner and approved by the Court is one that on the basis of the statutory language of the provisions on which it relies, is equally applicable to business as to nonbusiness property. Merely because the rejected formula was one suggested only for nonbusiness property does not mean that the approved formula is similarly limited."

It was further stated that "nothing in the statute suggests that the depreciations allowed by [the various] categories are to be computed by formulae differing from one category to another".

The opinion concluded, 239 F.2d 369, that the owner of partially destroyed non-business property may take his entire deduction at once. This clearly negates the necessity for restoring the property to its original condition in order to measure the amount of the loss. This, of course, is simply applying common sense to a not uncommon situation; there might often be reasons rendering the restoration either impossible or inadvisable, yet the loss is there.

The Regulation, above set out, announces a general rule that the amount of the loss shall be calculated by the lesser of either (1) the difference in the fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty, or (2) the adjusted basis prescribed in another part of the regulation.

Suppose a taxpayer loses a structure by fire and insists on restoring it to the condition existing immediately before the fire, and suppose that, contrasted with the market value formula, restoration would greatly increase the loss. The Government most likely would insist on its regulation, to-wit, the "before and after fair market value" rule for computing the amount of the loss.

The statute, § 165, Internal Revenue Code of 1954, 26 U.S.C. 165, provides that there shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. The statute prescribed no method for the computation of the loss. The Regulation deals with this subject. This returns us to the language of the Fifth Circuit in *Alcoma*, supra, 239 F.2d at 367, "even granting that the allowance of any deductions is a matter of legislative grace, where the statute explicitly provides for one the Commissioner cannot cut it down without specific statutory authority".

There is no statute authorizing the Commissioner, at his option, to use either the fair market value test or the cost of restoration standard, depending upon which would result in the greater tax recovery for the Government. There is no cost of restoration regulation.

We are constrained to hold, therefore, that the District Court fell into no error when it submitted this case to the jury under the "before and after" fair market standard provided by the Regulations.

■■■ As to the second question, it is not to be doubted that Mr. and Mrs. Conner received $4,200 in reimbursement of expenses which never would have been incurred, which they would have had no necessity for incurring, had it not been for the fire loss. They had been prudent enough to buy and pay for insurance against such a contingency which actually came to pass. They lost the use of their own home and received the use of another in its place and stead, the cost of which was reimbursed by the insurance company. We agree with the District Court that "there must be gain before there is income within the meaning of the sixteenth amendment". We further agree that the receipt of these funds for the reasons and uses indicated represented no gain to these taxpayers and did not have to be reported as gross income for which there was no corresponding deduction. Eisner v. Macomber, 1919, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521; Commissioner of Internal Revenue v. Glenshaw Glass Company, 1955, 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483; Commissioner of Internal Revenue v. Lo Bue, 1956,

351 U.S. 243, 76 S.Ct. 800, 100 L.Ed. 1142.

Nevertheless, since the $4,200 received as the cost of renting another residence represents, as we have noted, the loss of use value of taxpayers' own home, the District Court should have taken this amount into account in its determination of the calculations by which the amount of loss deduction resulting from the fire was computed. It is apparent that the fair market value of the house after the fire in its damaged condition would contain, in any rational buyer's mind, a discount amount for loss of use while the house was being restored to a livable condition. Obviously a house into which one can move today is worth more than a house only available for occupancy six months hence, i. e., the value of the damaged house is also discounted by the approximate rental value of an equivalent house during that period of time.

In the instant case, the taxpayers were compensated for the loss of occupancy of their house, and used this compensation to rent a comparable house in the same neighborhood as the one destroyed. Therefore, when the jury found the lesser market value of the taxpayers' house after the fire, it found an element of loss besides the cost of restoration, i. e., delay in availability of the house for use. To permit taxpayers to deduct the full difference between value before and value after as found by the jury, without recognizing that they have been reimbursed for part of the loss, i. e., so much of the use value element as is represented by the rental costs of replacement housing, would thus give them a greater deduction than that to which they are entitled.

We therefore remand the case to the District Court for recalculation of the allowable deduction by including the $4,200 in the amount to be subtracted from the loss figure found by the jury, recalculation of the amount of refund due the taxpayers, and modification of the judgment accordingly.

So ordered.