George W. FINKBOHNER, Jr. and
Beverly R. Finkbohner,
Plaintiffs-Appellees,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 85–7217.

United States Court of Appeals,
Eleventh Circuit.

May 6, 1986.

Finkbohner, Lawler & Olen, Stephen C. Olen, Mobile, Ala., for plaintiffs-appellees.

Michael L. Paup, Glenn L. Archer, Jr., Garry Gray, Patricia M. Bowman, (202) 633–3361 Ann Belanger Durney, Dept. of Justice, Tax Div., Washington, D.C., for defendant-appellant.

Before RONEY AND HATCHETT, Circuit Judges, and NICHOLS *, Senior Circuit Judge.

NICHOLS, Senior Circuit Judge:

This is an appeal by the United States alleging error by the United States District Court for the Southern District of Alabama in entering judgment on a jury verdict. The jury awarded plaintiffs $12,500 as a casualty loss deduction under section 165(c)(3) of the Internal Revenue Code of 1954. Plaintiffs had claimed such a loss in their joint federal returns for 1980, in the amount of $24,900, the result of flood damage incurred in April and May of that year. The Commissioner disallowed all but $1,200; the plaintiffs elected to pay the tax as recomputed and sue for refund. The jury's verdict would result in a tax refund in an amount as yet uncomputed. The appeal challenges the court's instructions to the jury as to how to compute the deduction and its denial of motions for directed verdict and for judgment n.o.v. We affirm.

## Facts

The taxpayers owned and occupied a substantial residential property worth, before the floods, $120,000 as agreed by both side's experts. It was located in Mobile, Alabama on a cul-de-sac adjacent to Three Mile Creek. Flood waters entered and damaged several of the dozen homes fronting on the cul-de-sac, but as to plaintiffs' property, damaged only the driveway and grounds. The Commissioner allowed deduction representing the cost of the physical repairs, less a $100 deductible for each

of the taxpayers. There was no flood insurance.

The case was tried on the theory, on which the experts constructed their testimony, that the proper measure of the casualty deduction was the value of the property before and after the disaster, as is required by the Internal Revenue Regulations, 26 C.F.R. § 1.165–7. There was no question about that—the amount of the adjusted basis under subsection (b)(ii) not being less. There are certain recognized qualifications, however, to the general rule and others in dispute. Plaintiffs conceded that, for casualty loss purposes, one must compute the value after the disaster without reduction for "temporary" buyer resistance caused by the flood itself. Plaintiffs' expert said his figures, which showed a reduction from $120,000 to $95,000, took into account only permanent buyer resistance, and he left no doubt of his opinion that the floods had permanently damaged the marketability of the property. Defendant's expert conceded that there was a temporary loss of fair market value, additional to the cost of repairs, of about $2,000, but contended there had been a complete recovery and therefore no permanent loss.

The municipal authorities decided after the May flood to eliminate, for safety reasons, seven of the twelve houses on the cul-de-sac. They were demolished and the lots acquired to be maintained as permanent open space. Plaintiffs introduced evidence that this markedly diminished the amenities and attractiveness of their home, placing it in a lonesome neighborhood, more exposed to crime, and with much diminished privacy in view of the proximity of heavily traveled streets and bridges. This aspect of value was a main reliance of taxpayers' expert. Plaintiffs own house was considered for acquisition and demolition, but finally exempted from it because of its lesser exposure, it being considered that even a possible flood such as would

* Honorable Philip Nichols, Jr., Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

occur only once a century, would not cause it serious damage.

The Army Engineers had, on the date of the trial, a project to control the floods, but it required congressional approval which had not been obtained, with no allocation of funds by either the United States Government or the City of Mobile, as would be required. Anyway, by Mr. Finkbohner's testimony, the project would not benefit him if carried out, for various reasons which he stated to the jury. One was that the creek would be widened and brought nearer his property. There was evidence that the flood exposure would increase with time, as the covering of land with asphalt or other hard material incident to further development would cause water to run off faster after rainfall than it would do in a state of nature. Mr. Finkbohner testified that the assessors of Mobile had reduced the local tax assessment on the property after the 1980 floods.

Defendant attempted, but failed to persuade the trial court that all loss of fair market value should be excluded from consideration as "buyer resistance" to the extent not measured by the physical damage. "Buyer resistance" is a term much bandied about in this and other cases of the kind and does not always have the same meaning. To defendant it seems to mean any reason an otherwise "willing buyer" might have, except the cost of physical repair, for not paying the full asking price for the property. Thus defendant semantically allows loss of fair market value as the regulation requires, but actually views section 165(c)(3), in the circumstances of this case at least, as allowing nothing beyond physical damage. The court, over defendant's objection, instructed the jury they could award compensation for loss of value due to "buyer resistance" to the extent it was permanent. The verdict reflects that the jury determined that some "buyer resistance" resulting from the floods of 1980 would be permanent, though not all the Finkbohners claimed. Defendant properly preserved its position for the consideration of this court by objecting to the instruction and by motions for a directed verdict and judgment n.o.v. If defendant were right, the jury could not award anything over the undisputed cost of physical repair as the Commissioner had all along allowed. Incidentally, the verdict of $12,500 necessarily was the net figure after the jurors had subtracted the uncontested repair cost from the total loss in fair market value as determined by them.

*Discussion*

That the proper computation of a section 165(c)(3) casualty loss is based on fair market value just before less value just after the disaster, comes down to us from *Helvering v. Owens,* 305 U.S. 468, 59 S.Ct. 260, 83 L.Ed. 292 (1939). It is subject, of course, to the limitation imposed by basis, but that is not in issue here. The regulation, section 1.165-7, *supra,* says the same. It requires, however, exclusion of any "general market decline" which would affect damaged and undamaged property alike. That clause is not here in issue either. The regulation goes on that the cost of repairing the damaged property "is acceptable as evidence of the loss of value," but may not be allowed to the extent it adds to the value as it was before the disaster. The regulation does not address the problem we have here—the treatment to be given to loss of fair market value due to "buyer resistance" and not to physical damage.

■ *Conner v. United States,* 439 F.2d 974 (5th Cir.1971) is authority binding in this circuit and is the precedent principally relied on by the trial court. It holds that in case of a fire which partially destroys a dwelling, the Commissioner may not use the cost of repairs as a ceiling on the section 165(a) deduction, but must allow the diminution in fair market value if it is greater. The court points out, in case the cost of repairs were the greater, the Commissioner would certainly not allow the excess over loss of fair market value. We may take notice, however, that "buyer resistance" due to the casualty itself was not the problem in Conner, and is not likely to

be in case of a dwelling restored after fire damage, quite unlike the situation with flood damage.

We think defendant's position is, however, quite untenable in view of *Conner.* In effect, defendant gives lip service to the fair market value test, while in reality, requiring that everything except the cost of repairs be adjusted out of the case as "buyer resistance." We think the regulation as well as the *Conner* case require that the award be really, not just ostensibly, based on loss of fair market value. Any adjustment to that figure must be one made necessary by the purpose and policy of the statute itself.

Defendant cites and relies on cases from other circuits which we are not obliged to follow. We think, however, that in adjusting out of the loss allowable any merely temporary "buyer resistance," the trial court avoided real conflict with these decisions.

*Kamanski v. Commissioner,* 477 F.2d 452 (9th Cir.1973) deals with a California mud slide which did minor damage to taxpayer's property but demonstrated the existence of dangerous soil conditions. The loss was due, the court said, to "buyer predictions that future casualties would cause further damage * * *. The claim of loss must await the event." The thought is that a loss of present value generated by a fear of future damage is not a section 165(c)(3) casualty for the present owner because there is only one real future loss, and the future owner can claim it when the future disaster occurs. We note, however, that the "buyer resistance" in our case is not substantially imputable to any informed fear of future damage. There was little showing of any likelihood that future floods would cause more physical harm than the ones of 1980. The maximum flood that would occur only once every hundred years would not cause water to enter the Finkbohner's dwelling. The essence of the claim is that the 1980 flood generated changes in the character of the neighborhood that took place then. They would not be allowable should a flood take place in 1990. They had to be taken for 1980, if ever.

*Citizens Bank of Weston v. Commissioner,* 252 F.2d 425 (4th Cir.1958) deals with the bank's claim for a casualty loss deduction because, after a flood in the taxable year, it decided not to use any more a basement which had been flooded and in which it had lost valuable records. The opinion, affirming a Tax Court denial, reasons that if a deduction for the value of the basement were allowed, logically a revival of the utility of the basement, due to a flood control project then in contemplation, would require restoration of the deduction, for which however there was no machinery. The restriction of the jury's consideration in the instant case to permanent loss of value would seem to take care of such concerns.

■ Finally, defendant's motion for judgment n.o.v. was primarily to call to the court's attention the Fifth Circuit case *Capozzoli v. United States,* No. 84-3455 (decided Jan. 23, 1985). At 753 F.2d 1073 it is listed among cases decided without published opinion. The full opinion is in the record. It bears a notation that under Local Rule 47.5 of that circuit, it will not be published. It may therefore seem somewhat curious to refer to it here, however, the local rule referred to says unpublished opinions are precedent, and it does not absolutely ban their citation. Government counsel had every reason to disregard the general practice of noncitation as he had already cited and relied on the decision below, while inviting attention to the pendency of the appeal. He did not violate any local rule of this circuit.

*Capozzoli,* then, involves a 165(c)(3) claim for casualty loss respecting Louisiana residential property damaged in a 1977 flood. As here, the Commissioner allowed the cost of physical repair but disallowed a factor of "economic obsolescence," really "buyer resistance," which taxpayer's expert admitted would, for the most part, subside, though he asserted not wholly. The trial court disallowed the claimed excess over repair cost, as did the Fifth Cir-

cuit. *Conner, Kamanski*, and *Citizens Bank of Weston, supra*, are all cited. The appellate court took the view that mere increase in public awareness of a risk of flood damage that has always existed, is not a casualty loss. More importantly, the impact of the flood on market value was concededly not permanent, not even according to taxpayer's expert. On appeal, taxpayer argued that the flood caused permanent restrictions on use of the property, but the court put this aside because it was not the basis of taxpayer's expert testimony.

Our district judge, denying the motion, noted that "there was evidence of permanent actual loss aside from physical damage in this case."

We conclude from these cases, and others defendant refers to, that evidence showing willing buyers temporarily pay less for property only recently subjected to flooding, will not by itself justify retaining in an award determined by loss in market value, the portion ascertainably or inferentially due to such a factor. This is to allow the property owner to deduct the consequences of future disasters as well as his own. We know the volatile market will decline sharply on occurrence of a natural disaster, yet will rebound when it is no longer fresh in people's minds. New and more costly houses will then replace those the flood damaged. It is different when the impact of the flood on the market value shows itself not wholly or chiefly in the expectation that additional floods will in future occur, but more directly in changes in the neighborhood, or acts of public officials, that will outlast the fresh recollection of disaster. That is another matter with which the cited case authority does not deal. Plaintiffs, taxpayers, perceiving this, were astute enough to state and present their case on the permanent impairment theory.

It is evident that, for example, the permanent removal of seven out of twelve neighboring houses is a permanent change. Awareness of it by buyers does not reflect their anticipation of a future catastrophe.

It is something that exists right now. Since the loss of value from this and other causes is permanent, there will not be any recovery of it as fears for the future become less acute. A lower value plateau is reached, which will be the "value before" if another catastrophe occurs. Therefore, the owner when the next catastrophe occurs will not be able to claim a casualty loss founded upon it. It must be claimed right now if it is going to be at all. Repeated claims for what is really the same loss, the fear behind the cases cited, are not to be anticipated here.

Congress has let stand for many years the fair market value before and after as the measure of the loss, as stated in the regulations and in the cases. It could have substituted the cost of repairs, either entirely or as a ceiling, but has not done so. Therefore, we must determine the loss on the basis of value before and after. We cannot pursue the sound reasoning of the *Kamanski* and other cases to the point where fair market value is only ostensibly, not really, the test. Clear-cut reasons, based on the purpose and policy of the statute, are stated in the *Kamanski* and other cases, but are not and cannot be stated here. Accordingly, the verdict must stand.

### Conclusion

The judgment entered by the court below is affirmed and the case is remanded for determination of the amount of refund to which the taxpayers are entitled according to the verdict of the jury.

AFFIRMED.

HATCHETT, Circuit Judge, dissenting.

*Conner v. United States*, 439 F.2d 974 (5th Cir.1971), on which the majority relies, has no bearing on this case. *Conner* holds that the Internal Revenue Service may not limit a fire loss tax deduction to cost of restoration rather than the difference in fair market value before and after the fire. *Conner* does not address the issue present-

ed in this case: what factors may be used to calculate fair market value.

I would hold that a decline in fair market value due to buyer resistance because of fear of a recurrence of flooding is not a permanent loss. The decline in fair market value must be directly related to actual physical damage or to impairment of the taxpayer's property. *Kamanski v. Commissioner,* 477 F.2d 452 (9th Cir.1973); *Pulvers v. Commissioner,* 407 F.2d 838 (9th Cir.1969).

Because market conditions change, a market reflection of immediate buyer resistance is not a fixed measure. "The scheme of our tax laws does not ... contemplate ... a series of adjustments to reflect the vicissitudes of the market, or the wavering values occasioned by a succession of adverse or favorable developments." *Citizens Bank of Weston v. Commissioner,* 252 F.2d 425 (4th Cir.1958).

The Finkbohners' expert appraiser attributed the loss in value to damage to landscaping and buyer resistance. The removal of the homes occurred after the Finkbohners' appraisal of the fair market value of the property. A taxpayer cannot rely on factors not included in the appraisal as evidence that the downward fluctuation is permanent. *See Capozzoli v. United States,* 753 F.2d 1073 (5th Cir.1985) (unpublished). Even if the removal of the neighboring houses is taken into account and assumed to be permanent, their removal is not an "actual loss resulting from damage to the property," as required by Treas.Reg. § 1.165–8(b)(1), but is based on the preexisting fact that the area is subject to flooding. *See Kamanski,* 477 F.2d at 452; *Capozzoli,* 753 F.2d 1073 (relying on *Kamanski* ). Two factors other than direct physical damage to the property might reflect permanent impairment: reduced access to the property or abandonment "in good

sense." *See Pulvers,* 407 F.2d at 839; *Citizens Bank of Weston,* 252 F.2d at 428. Neither factor is present.

The majority has erred by ignoring the intent of Congress to limit the category of deductions included in section 165(c)(3) to a specific few and "other casualty losses" like those few. *See Pulvers,* 407 F.2d at 839. Congress creates deductions; "the permissible deductions are strictly controlled by the code and equity cannot create a deduction not granted by the code." *Lettie Pate Whitehead Foundation, Inc. v. United States,* 606 F.2d 534, 539 (5th Cir. 1979). Only losses intended by Congress to be deductible are deductible.

The law limiting deductions to actual physical loss is well settled.* It is based on an interpretation of congressional intent that has survived for some thirty years. No good reason appears on the record or in the arguments to depart from the law in other circuits.

---

* The Fifth Circuit decided *Capozzoli,* in which the taxpayers advanced the nearly identical theory, pursuant to that circuit's local Rule 47.5, which provides for the nonpublication of "opinions that have no precedential value or merely decide particular cases on the basis of well-settled principles of law ...." Unlike the majority, the Fifth Circuit did not view *Conner,* which also binds that circuit, as relevant to this case; the court cited it, but concluded that the taxpayers' attempt to broaden the *Conner* holding ran afoul of the well-settled principles established in *Kamanski* and *Citizens Bank of Weston.*