BARNEY C. RUBEN AND ESTATE OF ELEANOR RUBEN, DECEASED, BARNEY C. RUBEN AND DANTE P. WEBSTER, CO-EXECUTORS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ruben v. Commissioner
Docket No. 21215-85.
United States Tax Court
T.C. Memo 1987-277; 1987 Tax Ct. Memo LEXIS 277; 53 T.C.M. (CCH) 992; T.C.M. (RIA) 87277; June 8, 1987. Dickinson Thatcher, for the petitioners. Joyce L. Sugawara, for the respondent. WRIGHT
MEMORANDUM OPINION WRIGHT, Judge: Respondent determined a deficiency of $135,629 *280 for the taxable year 1981 and additions to tax in the amounts of $6,781 and 50 percent of the statutory interest due on $135,629 under sections 6653(a)(1)[1] and 6653(a)(2), respectively. After concessions, the issues for our consideration are (1) whether the amount of petitioners' deduction for losses sustained in a 1981 fire is limited to their adjusted basis in the damaged property less any insurance compensation; and (2) whether the underpayment of petitioners' income tax for the taxable year 1981 was due to negligence or intentional disregard of rules and regulations. The facts of this case have been fully stipulated pursuant to Rule 122 and are so found. This reference incorporates herein the stipulation of facts and attached exhibits. At the time the petition in this case was filed, petitioner Barney C. Ruben resided at Santa Ynez, California. Petitioner Estate of Eleanor Ruben, by co-executors Barney C. Ruben and Dante P. Webster, had its principal office at all times relevant *281 herein in care of Dickinson Thatcher, a professional law corporation at Van Nuys, California. Petitioners Barney C. Ruben and Eleanor Ruben (the Rubens or petitioners) timely filed a joint return for the taxable year 1981. Petitioners spent approximately $172,911.67 in building, improving and furnishing their residence at Santa Ynez, California, computed as follows: Date Purchased
Nature of Item
Amount
1962-1964
Residence
$127,366.97
1965
Improvements
2,614.00
Before Nov. 1967
Furniture/furnishings
42,930.70
Total
$172,911.67
The parties have agreed that the Rubens' adjusted basis, based on amounts spent in 1962 through 1965 on the entire residence and before November 1967 on the furniture and furnishings did not exceed $172,911.67. On or about September 28, 1981, petitioners' residence was damaged by a fire. Portions of the building and its contents were salvaged. Following the fire, the residence was rebuilt. The costs expended by the Rubens to repair and replace the damaged property were as follows: Erling Pohls, Contractor
$371,370.34
Muzicraft (sound system)
8,197.54
$379,567.88
Furniture and furnishings
45,458.75
Total
$425,026.63
Less enhancements
8,000.00
New Replacement Cost
$417,026.63
*282 These costs exceeded the $345,000 claimed as a casualty loss on petitioners' Federal income tax return for 1981. Based on the fire insurance carried by petitioners, the insurance company reimbursed them in the amounts of $126,500 for the dwelling and $45,000 for the contents thereof, consisting of furniture and furnishings, for a total of $171,500. On their income tax return for the taxable year 1981, the Rubens reported a loss from the fire in the amount of $345,000 and claimed a deduction with respect thereto in the amount of $173,400 computed as follows: Loss before insurance reimbursement
$345,000 Insurance reimbursement
171,500 Unreimbursed loss
173,500 Exclusion
(100)
Claimed deduction
$173,400 In the statutory notice of deficiency, respondent determined that petitioners were not entitled to a casualty loss deduction because they had not established the amount of the claimed loss nor had they established that they had in fact a deductible loss during the taxable year in issue. Petitioners, in arguing that they are entitled to a casualty loss deduction, contend that in an inflationary economy replacement cost is the true measure of basis. *283 They propose that their basis in the damaged property be increased in proportion to the inflation which occurred between 1962 and 1981 and should reflect the resulting diminished purchasing power of the dollar. [2] They also assert that in light of the allowance of rollover treatment of capital gains on the sale of a principal residence pursuant to section 1034, the disallowance of basis determined by replacement cost when a casualty loss occurs is capricious and unreasonable. *284 Section 165(a) and (c)(3) allows a deduction for losses by fire, storm, shipwreck or other casualty, or from theft, to the extent such losses sustained during the taxable year exceed $100 and are not compensated by insurance or otherwise.[3]Section 165(b) provides that the amount of the deductible loss is determined by the taxpayer's adjusted basis in the property under section 1011. The proper measure of a casualty loss to nonbusiness property is limited to the difference between the fair market value of the property immediately preceding the casualty and its fair market value immediately thereafter, not exceeding its adjusted basis, reduced by any insurance or other compensation. Helvering v. Owens,305 U.S. 468 (1939); Pfalzgraf v. Commissioner,67 T.C. 784 (1977); Cornelius v. Commissioner,56 T.C. 976 (1971); Millsap v. Commissioner,46 T.C. 751 (1966), affd. on other issues 387 F.2d 420 (8th Cir. 1968); section 1.165-7(b)(1), Income Tax Regs. Subject to certain exceptions, *285 sections 1011 and 1012 provide the general rule that a taxpayer's basis in property shall be its cost. Fair market value may be ascertained by either "competent appraisal" or by proof of the cost of repairs. Sec. 1.165-7(a)(2), Income Tax Regs.; Pfalzgraf v. Commissioner,supra at 787. The burden of proving the cost and fair market value of the property is on the taxpayer. Rule 142(a); Heyn v. Commissioner,46 T.C. 302 (1966); Pfalzgraf v. Commissioner,supra;Knapp v. Commissioner,23 T.C. 716 (1955). See generally Rockwell v. Commissioner,512 F.2d 882, 885-887 (9th Cir. 1975), affg. a Memorandum Opinion of this Court. Further, where the insurance proceeds more than *286 compensate for the loss, no deduction is allowable. United States v. Koshland,208 F.2d 636 (9th Cir. 1953); Ternovsky v. Commissioner,66 T.C. 695, 701 (1976). Petitioners' contention that the adjusted basis in the damaged property should be determined by replacement cost is without merit. [4] Although petitioners, in effect, seek a deduction based upon losses due to inflation and the decreased value of the dollar, this Court has held on several occasions that the value of the dollar is "irrelevant for purposes of [a taxpayer's] taxable income." Gajewski v. Commissioner,67 T.C. 181, 194-195 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978), wherein we noted that "We read Bates as holding that for purposes of the tax law, a dollar is what Congress says it is, without regard to intrinsic value or lack thereof." See also Sibla v. Commissioner,68 T.C. 422, 431 (1977), affd. 611 F.2d 1260 (9th Cir. 1980), where we held that the taxpayer was not entitled to a deduction nor any other adjustment to his gross income because of the fact that the value of a dollar *287 may have declined in relation to silver or gold. Deductions are a matter of legislative grace and petitioners bear the burden of proving their entitlement to them. Deputy v. Du Pont,308 U.S. 488 (1940); New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934); Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). While Congress has, in recent years, enacted several limited provisions which adjust the tax structure to compensate for inflation, [5] there is no statutory provision which allows for an upward adjustment to basis to reflect inflation or loss of the purchasing power of the dollar. [6]
*288 Similarly, there is no statutory authority which supports petitioners' interpretation of the term "cost" to mean "replacement cost." Petitioners claim that such interpretation elevates substance over form, as provided for by section 1.165-1(b), Income Tax Regs. Petitioners' reliance on that particular Treasury regulation, however, is misplaced. That regulation provides that only a bona fide loss is allowable as a deduction under section 165(a) and such loss must be evidenced by closed and completed transactions, fixed by identifiable events and actually sustained during the taxable year. Thus, in determining a loss one must look to the substance of the transaction and not merely the form in which the transaction occurred. The regulation does not lend credence to the argument that cost and adjusted basis are mere forms of bookkeeping entries or that the true "substance" of cost is the amount spent to replace a home damaged by fire. Petitioners also rely on the cases of Keith v. Commissioner,52 T.C. 41 (1969) and Conner v. United States,439 F.2d 974 (5th Cir. 1971), as establishing that actual loss should be determined *289 by the replacement cost. We believe that the cited cases are distinguishable from the situation here. Specifically, in the Keith case, the issue related to the method of valuation in determining a taxpayer's loss before and after a flood. The taxpayer provided an appraisal to show the difference in fair market value between his pre-casualty and post-casualty property. This Court, citing section 1.165-7(a)(2)(ii), Income Tax Regs., elected the cost of repairs method to show evidence of loss of value and looked to the taxpayer's share of the cost of repairing a dam and restoring a lake as the amount allowable as a casualty loss. Basis was not a limiting factor because the taxpayer sought to deduct a casualty loss in an amount less than his adjusted basis and the loss allowed by the Court was less than his adjusted basis. 52 T.C. at 49 n. 10. Similarly, the Conner case does not support petitioners' position. There the Commissioner argued that because the taxpayers recovered insurance proceeds, which allegedly enabled them to restore their home to its pre-existing condition, the taxpayers weren't entitled to deduct a casualty loss. *290 The Commissioner asked that the jury be so instructed. Instead, the District Court specifically instructed the jury as to the meaning of fair market value and submitted the casualty loss issue to the jury for a special verdict. The Commissioner appealed, contending that the District Court committed reversible error in expressly failing to limit the fire loss deduction to the cost of repairing or restoring the damaged property to its pre-casualty position. The Fifth Circuit, relying on section 1.165-1(b)(i) and (ii), Income Tax Regs., concluded that the District Court had not erred because there was no "cost of restoration" statute which authorized the Commissioner, "at his option, to use either the fair market value test or the cost of restoration standard, depending upon which would result in the greater tax recovery for the Government." Conner v. Commissioner,supra at 980. Unlike the situation in the Keith and Conner cases, fair market value is not in issue here. Regardless of the method of valuation, however, the amount of loss deductible under section 165 cannot be in excess of adjusted basis. See Millsap v. Commissioner,supra.
We *291 now turn our attention to petitioners' assertion that it is unfair to limit the amount of the casualty loss to the cost of the property given the rollover treatment afforded gains from the sales of residential property under section 1034. For the following reasons, we find this contention without merit. First, section 1034 allows taxpayers merely to defer the recognition of, rather than to avoid or exclude, gain from the sale of a residence. Secondly, if petitioners had sold their residence at a loss, rather than losing a portion of it in a fire, they would not have been able to recognize any loss realized inasmuch as no loss is recognized on the disposition of personal assets. Secs. 165 and 262. The casualty loss provision therefore confers a benefit not available when residences are sold rather than damaged in a casualty. We also note that the amounts spent by petitioners to repair and restore their residence becomes the new adjusted basis used to compute gain when the residence is sold or to measure loss in the event that another casualty occurs. Finally, we must determine the amount, if any, of petitioners' loss that may be deducted. Although petitioners spent at least *292 $345,000 replacing and repairing portions of their house damaged in the fire including furnishings and furniture, the adjusted basis in the property did not exceed $172,911.67, representing the amount spent originally to purchase furniture and build the house. Secs. 1011 and 1012; Millsap v. Commissioner,supra.In Millsap, this Court concluded that the amount of the adjusted basis of property marks the upper limit of any possible casualty loss deduction to which a taxpayer might be entitled. Thus, petitioners' loss from the 1981 fire is that portion of the adjusted basis in the entire property ($172,911.67) attributable to the damaged portions of the house and furniture. Moreover, petitioners' deduction for the losses sustained is limited to the loss not compensated by insurance. In the instant case, petitioners received $171,500 in insurance compensation. Because the adjusted basis in the entire property was only $172,911.67, and portions of the property were salvaged, we conclude that petitioners' loss did not exceed the amount compensated by insurance. Accordingly, petitioners are not entitled to any deduction for losses with respect to the 1981 fire *293 and respondent's disallowance of the casualty loss must be sustained. Millsap v. Commissioner,supra.[7]
The remaining issue for decision is whether petitioners are liable for additions to tax. Respondent has determined that petitioners are liable for additions to tax under section 6653(a). Section 6653(a)(1) provides for an addition to tax of five percent of any underpayment which is due to negligence or intentional disregard of rules and regulations. Section 6653(a)(2) provides for an addition to tax in an amount equal to 50 percent of the interest payable under section 6601 with respect to that portion of the underpayment due to negligence or intentional disregard of rules and regulations and for the period beginning on the last day prescribed by law for payment of the underpayment. Under section 6653(a), negligence is the lack of due care or failure to do *294 what a reasonable and ordinary prudent person would do under the circumstances. Neely v. Commissioner,85 T.C. 934, 947 (1985). Respondent's determination that petitioners' underpayment of tax was due to negligence and intentional disregard of rules and regulations is "presumptively correct and must stand unless petitioners can establish that they were not negligent." Hall v. Commissioner,729 F.2d 632, 635 (9th Cir. 1984). Thus, petitioners bear the burden of proving that they are not liable for the additions to tax. Bixby v. Commissioner,58 T.C. 757, 791 (1972); Enoch v. Commissioner,57 T.C. 781 (1972); Rule 142(a). See also Zmuda v. Commissioner,731 F.2d 1417 (9th Cir. 1984), and Hanson v. Commissioner,696 F.2d 1232 (9th Cir. 1983). Petitioners have failed to introduce any evidence showing that their underpayment was not due to negligence or intentional disregard of rules and regulations. The law is well established that casualty losses may not exceed the adjusted basis of the destroyed property. Petitioners admitted this in their petition, yet they proceeded to litigate *295 this issue based on frivolous arguments. Similarly, petitioners' concessions as to respondent's disallowance of several items reflected on Schedule C of their return as well as deductions from their horse raising activities not entered into for profit, reflect the fact that petitioners' underpayment of tax was due to negligence and intentional disregard of rules and regulations. Accordingly, we sustain respondent's determination with respect to the additions to tax under section 6653(a)(1). We also conclude, for purposes of the additions to tax under section 6653(a)(2), that all of petitioners' underpayment for 1981 was attributable to negligence or intentional disregard of rules and regulations. To reflect concessions and the foregoing, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners ask that this Court take judicial notice of certain exhibits, namely "The Consumer Price Index: Concepts and Content Over the Years" published by the Bureau of Labor Statistics in 1978, "Construction Cost Indexes, 1915-76," published by the United States Department of Commerce, and a Construction Cost Index for April 1981, also from the Department of Commerce, which were admitted as evidence in this case. Under Rule 201(b) of the Federal Rules of Evidence, judicial notice may be taken of a fact (1) either generally known within the community or (2) capable of accurate and ready determination by resources whose accuracy cannot reasonably be questioned. As a practical matter, however, the facts contained in these reports are irrelevant for the purpose of determining basis. Sections 1011 and 1012 of the Internal Revenue Code provide the general rule that a taxpayer's basis in property shall be its cost. While it is true that such reports do provide evidence of inflation, basis in property is not affected by inflation. See discussion in text, infra.↩
3. The limitations placed on casualty losses under section 165 have changed since 1981. For example, section 165(h)(2)↩, effective for taxable years beginning after December 31, 1982, provides that a net casualty loss is allowable only to the extent it exceeds 10 percent of adjusted gross income.
4. See Advocate Publishing Co. v. Commissioner,6 B.T.A. 780 (1927) (replacement value is not a proper basis for determining depreciation); Estate of Libby v. Commissioner,T.C. Memo. 1955-180↩ (depreciation deduction allowable for Federal income tax purposes is not determined by the varying year-to-year value of an asset but by the cost or other basis of the property to the taxpayer).
5. See, e.g., sec. 1(f) as amended by sec. 101(a) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2097; secs. 32(i) and 63(c)(4), as added by secs. 111(c) and 102(a) of Pub. L. 99-514, 100 Stat. 2107, 2100.↩
6. See Crossland v. Commissioner,T.C. Memo. 1976-59↩ (no deduction is available for a loss in the purchasing power of the dollar because inflation is a mere economic loss and Congress has not permitted such a deduction).
7. See Henson v. Commissioner,T.C. Memo. 1979-110↩ (the Court disallowed a deduction for a casualty loss which did not exceed the insurance reimbursement received by the taxpayers).